[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 25-5268**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

TODD M. HARPER,
in his personal capacity and in his official capacity as a Member of the
National Credit Union Administration Board, *et al.*,

*Plaintiffs-Appellees,*

v.

SCOTT BESSENT, in his official capacity
as Secretary of the Treasury, *et al.*,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY
AND STAY PENDING APPEAL**

———————————

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

SHARON SWINGLE
LAURA E. MYRON
DANIEL AGUILAR
*Attorneys, Appellate Staff
Civil Division, Room 7245
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.     Parties and Amici

Plaintiffs are Todd M. Harper and Tanya F. Otsuka, in their personal capacities and in their official capacities as Members of the National Credit Union Administration Board. Defendants are Scott Bessent, in his official capacity as Secretary of the Treasury; Larry Fazio, in his official capacity as Executive Director of the National Credit Union Administration; Kyle S. Hauptman, in his official capacity as Chairman of the National Credit Union Administration Board; Trent Morse, in his official capacity as Deputy Assistant to the President and Deputy Director of the White House Office of Presidential Personnel; and Donald J. Trump, in his official capacity as President of the United States.

Jeffrey Moats filed an amicus brief in district court. There have been no intervenors.

### B.     Ruling Under Review

The ruling under review is a summary judgment order (Dkt. 29) and opinion (Dkt. 28) that the district court (Judge Amir Ali) issued on July 22, 2025, reinstating plaintiffs to their position as members of the National Credit Union Administration Board. The opinion and order are attached to this motion.

## C.    Related Cases

This case has not previously been before this Court.

*Wilcox v. Trump*, No. 25-5057 (D.C. Cir.), similarly involves a challenge to the President's removal of a principal officer from a multimember agency (the National Labor Relations Board) with statutory removal restrictions, 29 U.S.C. § 153(a).

*Harris v. Bessent*, No. 25-5055 (D.C. Cir.), similarly involves a challenge to the President's removal of a principal officer from a multimember agency (the Merit Systems Protection Board) with statutory removal restrictions, 5 U.S.C. § 1202(d).

*Grundmann v. Trump*, No. 25-5165 (D.C. Cir.), involves a challenge to the President's removal of a principal officer from a multimember agency (the Federal Labor Relations Authority) with statutory removal restrictions, 5 U.S.C. § 7104(b).

*LeBlanc v. U.S. Privacy and Civil Liberties Oversight Board*, No. 25-5197 (D.C. Cir.), involves a challenge to the President's removal of principal officers from a multimember agency (the Privacy and Civil Liberties Oversight Board) without statutory removal restrictions.

*Slaughter v. Trump*, No. 25-5261 (D.C. Cir.), involves a challenge to the President's removal of principal officers from a multimember agency

(the Federal Trade Commission) with statutory removal restrictions, 15 U.S.C. § 41.

*Boyle v. Trump*, No. 25-1687 (4th Cir.), involves a challenge to the President's removal of principal officers from a multimember agency (the Consumer Product Safety Commission) with statutory removal restrictions, 15 U.S.C. § 2053(a).

/s/ *Daniel Aguilar*
Daniel Aguilar
   *Attorney, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................... 1

STATEMENT ...................................................................................... 5

    A.    Statutory Background................................................. 5

    B.    This Litigation ............................................................ 7

ARGUMENT........................................................................................ 8

    A.    The Government Is Likely To Prevail On The Merits................. 9

        1.    The President has general authority to remove principal executive officers at will, and no statute purports to restrict the removal of NCUA Board Members ............................................................. 9

        2.    The NCUA does not fit within any exceptions to the general rule of at-will removal ......................................... 11

        3.    Plaintiffs cannot show entitlement to reinstatement.......15

    B.    The Remaining Factors Favor A Stay ....................................... 20

CONCLUSION................................................................................... 23

CERTIFICATE OF COMPLIANCE

ATTACHMENT A: District Court Order

ATTACHMENT B: District Court Opinion

# INTRODUCTION

This appeal arises from an order of the district court reinstating two members of the National Credit Union Administration (NCUA) Board whom the President removed. No statute restricts the President's ability to remove these principal officers, and they are removable at will. The court's reinstatement of these principal executive officers—in defiance of recent Supreme Court precedent staying similar reinstatements—works a grave harm to the separation of powers and the President's ability to exercise his authority under the Constitution. The government seeks a stay of the order pending appeal, and an administrative stay while this Court considers the motion.

In *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025), the Supreme Court stayed similar orders reinstating Members of the Merits Systems Protections Board (MSPB) and the National Labor Relations Board (NLRB), recognizing that "the Government is likely to show that both" agencies "exercise considerable executive power," such that the President "may remove without cause" those agencies' principal officers. The Court additionally explained that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable

to perform her statutory duty." *Id*. The Court likewise stayed an order reinstating members of the Consumer Product Safety Commission (CPSC) whom the President had removed, holding that the matter was "squarely controlled by" *Wilcox*. Order at 1, *Trump v. Boyle*, 25A11 (U.S. July 23, 2025) (*Boyle* Order).

Applying *Wilcox*, this Court has properly stayed similar orders reinstating principal executive officers, explaining that *Wilcox*'s reasoning "fully applies" to such cases. Order at 2, *Grundmann v. Trump*, No. 25-5165 (D.C. Cir. July 3, 2025) (*Grundmann* Order). That conclusion applies with even greater force to officers who are not covered by any "statute * * * restricting the President's removal power." Order at 2, *LeBlanc v. U.S. Privacy and Civil Liberties Oversight Board*, No. 25-5165 (D.C. Cir. July 1, 2025) (*LeBlanc* Order).

Here, the President exercised his Article II authority to remove two principal officers—plaintiffs Todd Harper and Tanya Otsuka —from their positions as NCUA Board members, principal officers of an Executive Branch agency that performs quintessentially executive functions and wields substantial executive authority. Plaintiffs filed suit to challenge their removal, and the district court granted summary judgment and issued an injunction reinstating them to office. That extraordinary relief significantly

and unjustifiably intrudes on the President's constitutional authority to oversee the Executive Branch and the principal officers he must trust to carry out his responsibilities. The Supreme Court's stay orders in *Wilcox* and *Boyle*—and this Court's orders in *LeBlanc* and *Grundmann*—require staying the district court's order.

First, the district court erred in inferring restrictions on the President's removal power that are not present in statutory text. To restrict removal authority, "Congress must use very clear and explicit language," and "[m]ere inference or implication does not suffice." *Kennedy v. Braidwood Management, Inc.*, 145 S. Ct. 2427, 2448 (2025) (quotation marks omitted). Congress "knows how to" "depart from the default of at-will removability," *id.* (collecting statutes), but declined to enact any such restriction for the NCUA. Accordingly, the NCUA Board Members are removable at will. *See id.* at 2448-49.

Second, *Wilcox* establishes that explicit statutory restrictions on the President's removal power over executive multimember agencies are likely unconstitutional, and that reasoning applies with even greater force to atextual restrictions. The Supreme Court in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), recognized a limited exception to that rule of at-will Presidential removal for "a multimember body of experts,

3

balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law LLC v. CFPB*, 591 U.S. 197, 216 (2020). This exception, however, does not encompass the NCUA, which plainly exercises "considerable executive power" in carrying out its wide-ranging duties, *Wilcox*, 145 S. Ct. at 1415, and the NCUA "does not otherwise differ from *Wilcox* in any pertinent respect," *Boyle* Order at 1.

The NCUA prescribes rules and regulations governing federally chartered and federally insured credit unions, 12 U.S.C. § 1766(a); may appoint itself as conservator of a credit union and immediately take possession of its business and assets; *id.* § 1786(h); investigates violations of the Federal Credit Union Act, brings enforcement actions, and issues final decisions, *id.* § 1786(b), (p); orders parties to pay restitution, *id.* § 1786(e)(3)(A); removes officers from their roles at credit unions, *id.* § 1786(g)(1); imposes civil penalties, *id.* § 1786(k)(2); and enforces its orders in federal court, *id.* § 1786(k)(1). These are quintessentially executive functions. Accordingly, even if the Court were to infer a statutory removal restriction, the NCUA does not fit within the narrow *Humphrey's Executor* exception and Congress cannot restrict the President's removal authority.

Third, the district court erred in concluding that plaintiffs are entitled to reinstatement. The district court's remedy—an order requiring the President to reinstate principal officers he has chosen to remove from office—is extraordinary and virtually unprecedented. Such an order would greatly impede the President's authority to exercise "all of" "the 'executive Power'" of the United States. *Seila Law*, 590 U.S. at 203.

Fourth, the balance of the equities and the public interest decisively favor a stay. Plaintiffs have not suffered any irreparable harm by being deprived of their official position. *Wilcox* and *Boyle* make clear that allowing a principal officer to exercise executive power against the President's will inflicts irreparable harm on both the Executive Branch and the separation of powers.

A stay pending appeal is warranted. And consistent with this Court's grant of administrative stays in *Grundman v. Trump*, No. 25-5165 (D.C. Cir.), and *Slaughter v. Trump*, No. 25-5261 (D.C. Cir.), this Court should also grant an immediate administrative stay pending the ruling on a stay pending appeal.

## STATEMENT

### A.    Statutory Background

The National Credit Union Administration is an agency "in the executive branch," headed by a three-member Board. 12 U.S.C. § 1752a(a)-

(b). Board members are appointed by the President with the advice and consent of the Senate and serve six-year terms. *Id.* § 1752a(b)-(c). "Not more than two members" may be from the same political party. *Id.*

The NCUA exercises substantial authority to enforce the Federal Credit Union Act and regulates the vast majority of the Nation's credit unions, which collectively hold hundreds of billions of dollars in assets, *see American Bankers Association v. NCUA*, 934 F.3d 649, 659 (D.C. Cir. 2019). The NCUA Board may promulgate rules and regulations, 12 U.S.C. § 1766(a); and can investigate unsafe or unsound practices and alleged violations of applicable laws, *id.* § 1786(p). If the Board believes a violation occurred, it may institute an enforcement proceeding and hold an administrative hearing. *Id.* §§ 1786(b), (e). If there has been a violation, the Board may order the party to cease-and-desist, pay restitution or reimbursement, and "take such other action as the Board determines to be appropriate." *Id.* § 1786(e)(3). The Board may also remove offending parties from office and prohibit them from participating "in any manner" in "the affairs of any insured credit union," or "any insured depository institution." *Id.* § 1786(g). And it may impose substantial money penalties. *Id.* § 1786(k)(2). To ensure compliance, the Board can enforce its orders in federal district court. *Id.* § 1786(k)(1).

6

The Board can suspend or revoke the charter of any federal credit union or place it in involuntary liquidation, *id.* § 1766(b)(1); and may also appoint itself as conservator of any insured credit union in various circumstances, *id.* § 1786(h).

### B.    This Litigation

Plaintiffs Harper and Otsuka were NCUA Board Members, serving terms through 2027 and 2029, respectively. Dkt. 1, ¶¶ 20-21. In April 2025, however, the President removed plaintiffs from their offices. Dkt. 28 at 4. Plaintiffs sued to contest their removal, "seek[ing] a declaration that their terminations were unlawful and an injunction reinstating them as Board members." *Id.* at 4-5.

The district court granted plaintiffs summary judgment, declaring that they "may be removed by the President prior to the expiration of their terms only for cause." Dkt. 29 at 1. The court noted that "the NCUA does not contain a provision that expressly limits the President's ability to remove the agency's Board members." Dkt. 28 at 6. But the court nevertheless inferred a for-cause removal restriction based on legislative history and context. *Id.* at 6-13. The court went on to conclude that these inferred removal restrictions were constitutional because the NCUA "does not exercise the kind of substantial executive power that would warrant a

7

departure from" *Humphrey's Executor v. United States*, 295 U.S. 602

(1935). *Id.* at 17. The court then enjoined the defendants, other than the

President, "as well as their subordinates, agents, and employees * * * from

removing Harper and Otsuka from their offices without cause or in any way

treating Harper and Otsuka as having been removed from office," and

"from impeding in any way their ability to fulfill their duties as members of

the NCUA Board." Dkt. 29 at 1.[1]

## ARGUMENT

In considering a stay pending appeal, this Court considers four

factors: the likelihood of success on the merits, the movant's irreparable

injury, the balance of harms, and the public interest. *Nken v. Holder*, 556

U.S. 418, 426 (2009).

The Supreme Court recently stayed similar orders reinstating

members of the NLRB, MSPB, and CPSC, concluding that the government

is likely to succeed on the merits and that the risk of harm to the

government from an order allowing a removed officer to continue

exercising executive power is greater than the risk of harm to a wrongfully

removed officer from an order denying reinstatement. *Trump v. Wilcox*,

---

[1] The government filed a stay motion in district court pursuant to Fed.
R. App. P. 8(a), which the court has not yet acted upon.

145 S. Ct. 1415 (2025); *Boyle* Order at 1. Following *Wilcox*, this Court stayed

reinstatement orders for agencies both with statutory removal restrictions,

*Grundmann* Order at 2 (Federal Labor Relations Authority, 5 U.S.C.

§ 7104(b)), and without such restrictions, *LeBlanc* Order at 1-2 (Privacy and

Civil Liberties Oversight Board). A stay is likewise warranted here.

## A.     The Government Is Likely To Prevail On The Merits

*Wilcox* and *Boyle* establish that the government is likely to prevail on

the merits because the Constitution empowers the President to remove at

will principal officers, like the NCUA Board Members, who lead a

freestanding component within the Executive Branch and exercise

"considerable executive power," *Wilcox*, 145 S. Ct. at 1415; *accord Boyle*

Order at 1. The government is also likely to prevail because the district

court's order exceeds its remedial powers.

### 1.     The President has general authority to remove principal executive officers at will, and no statute purports to restrict the removal of NCUA Board Members

"[I]t is undisputed that the NCUA statute does not contain a provision

that expressly limits the President's ability to remove the agency Board

members." Dkt. 28 at 6. Where "no statute restricts removal," "'there can be

no doubt' that the" appointing authority—here, the President—may remove

9

NCUA members "at will." *Braidwood*, 145 S. Ct. at 2444 (quoting *Ex parte Hennen*, 38 U.S. 230, 259 (1839)).

That should be the end of the inquiry. "Congress must use 'very clear and explicit language'" to "'take away' the power of at-will removal from an appointing officer." *Braidwood*, 145 S. Ct. at 2448 (quoting *Shurtleff v. United States*, 189 U.S. 311, 315 (1903)). "'[M]ere inference or implication' does not suffice," since Congress "knows how to" enact removal restrictions. *Id.* at 2448-49 (collecting statutes). Thus, statutory language providing that an agency shall be "independent" "does not make an officer removable only for cause" if there is no explicit removal restriction. *Id.* at 2449. Indeed the Supreme Court explained that this was true of the NCUA specifically. *Collins v. Yellen*, 594 U.S. 220, 249 (2021).

The district court brushed aside this rule and inferred removal restrictions that are not present in the statutory text, based on its assumptions about what Congress would have wanted. Dkt. 28 at 6-14. But "[c]ourts will not assume Congress legislated a potential separation of powers problem unless the statutory text makes Congress's intent to test constitutional lines apparent." *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023). In a single case involving the War Claims Commission—a temporary agency empowered only to adjudicate the dispensation of

10

government benefits—the Supreme Court inferred removal restrictions. *Wiener v. United States*, 357 U.S. 349 (1958). But there is no basis to make such an inference here, where the NCUA "is structurally housed squarely within the Executive Branch," and performs "core executive function[s]," such as promulgating rules, initiating enforcement actions, and imposing penalties and remedies. *Severino*, 71 F.4th at 1048; *see* 12 U.S.C. § 1752a(a). NCUA Board Members are thus removable at will, and the government is likely to succeed on the merits on that basis alone.

### 2. The NCUA does not fit within any exceptions to the general rule of at-will removal

Even if Congress had imposed removal restrictions on NCUA Board Members, those restrictions would not pass constitutional muster.

Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, § 1, cl. 1; *id*. § 3). To discharge those responsibilities, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id*. at 514.

11

NCUA Board Members are principal officers: they are appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 12 U.S.C. § 1752a(b), oversee their own department, and are not subservient to any other principal officer. For principal officers, the Supreme Court has recognized a single "exceptio[n] to the President's unrestricted removal power," *Seila Law*, 591 U.S. at 203. In *Humphrey's Executor*, 295 U.S. 602, the Court held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. This represents the "outermost constitutional limits of permissible restrictions on the President's removal power" under current precedent. *Id.*

Thus, the relevant question is whether the NCUA can be said to perform only "legislative and judicial functions" and thus fall within the *Humphrey's Executor* exception. *Seila Law*, 591 U.S. at 216. But the NCUA is no "mere legislative or judicial aid," *Seila Law*, 591 U.S. at 199—it discharges quintessential executive duties. The NCUA promulgates regulations that bind federally chartered and federally insured credit union across the country, 12 C.F.R. §§ 700.1–760.10. *See Collins v. Yellen*, 594 U.S. 220, 254 (2021) (an agency "empowered to issue a 'regulation or order'

12

* * * clearly exercises executive power"). The NCUA brings enforcement actions for violations of the Federal Credit Union Act and can issue coercive orders for such violations, requiring the respondent to cease-and-desist, to pay restitution or money penalties, or to remove officers from the credit union. 12 U.S.C. § 1786. The NCUA can enforce those orders in district court. *Id.* § 1786(k)(1); *see also Buckley v. Valeo*, 424 U.S. 1, 138-40 (1976) (interpreting and enforcing law through litigation is executive power). And the NCUA can appoint itself as conservator over, and liquidate, credit unions in various circumstances. 12 U.S.C. §§ 1786(h), 1787(a).

Those executive powers are not meaningfully different in a constitutional sense from those wielded by the NLRB, MSPB, or CPSC. And for those agencies, the Supreme Court has already held that the government is likely to show that the agencies "exercise considerable executive power." *Wilcox*, 145 S. Ct. at 1415; *Boyle* Order at 1. Applying *Wilcox*, this Court determined that the government was entitled to stays of orders reinstating members of the Federal Labor Relations Authority and the Privacy and Civil Liberties Oversight Board. *Grundman* Order at 2 ("The Supreme Court's reasoning fully applies to the FLRA, which possesses powers substantially similar to those of the NLRB."); *LeBlanc* Order at 1-3 (holding that the government was likely to succeed on the

merits of the challenged removal). The NCUA "wield[s]" at least comparable "executive power" to these agencies and must be accountable to the President by at-will removal. *See Seila Law*, 591 U.S. at 204 ("The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II.").

The district court's contrary conclusion rests largely on an overbroad reading of *Humphrey's Executor* and its progeny to encompass an agency that exercises substantial executive power. Dkt. 28 at 15-20. The Supreme Court in *Seila Law* made clear, however, that neither *Humphrey's Executor* nor the cases that followed it extend so far. After *Seila Law*, "only a very narrow reading of those cases is still good law" and "little to nothing is left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino*, 71 F.4th at 1050 (Walker, J., concurring). A panel of this Court is currently considering this issue on the merits and will issue a decision in due course. *Wilcox v. Trump*, No. 25-5057 (D.C. Cir. submitted May 16, 2025).

Those issues can be properly resolved when this case is decided on the merits. But the relevant question for a stay is whether "the Government is likely to show that" the NCUA "exercise[s] considerable executive power."

14

*Wilcox*, 145 S. Ct. at 1415. Because the NCUA exercises that power, a stay is warranted. *Boyle* Order at 1.

### 3. Plaintiffs cannot show entitlement to reinstatement

Defendants are likely to succeed on an additional ground. The district court erred by declaring that plaintiffs "remain members of the" NCUA Board and enjoining their removal. Dkt. 29 at 1-2. As explained below, such an order causes irreparable injury to the Government by "allowing a removed officer to continue exercising the executive power," *Boyler* Order at 1 (quoting *Wilcox*, 145 S. Ct. at 1415), which "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising," *Dellinger v. Bessent*, 2025 WL 559669, at *16 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (quoting *Trump v. United States*, 603 U.S. 593, 608-09 (2024)). As Judge Katsas explained, there would be no doubt of "grave and irreparable" injury if the district court had ordered reinstatement of a dismissed Secretary of State, and any differences between the Department of State and the FTC "go[] to the extent—not the character—of the President's injury." *Id.*[2]

---

[2] Two judges of this Court have expressed the view that "it seems appropriate to defer to the views expressed by our *en banc* Court" in *Harris v. Bessent*, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025), that reinstatement of

*Continued on next page.*

The Supreme Court has never suggested that reinstatement is an appropriate remedy in such circumstances. To the contrary, both the Supreme Court and this Court recognized long ago that a court "has no jurisdiction * * * to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). The appointment and removal of principal officers is specifically entrusted to the President, *see Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996) (recognizing that "principal officers of the United States * * * must be appointed, and removed, by the President"), and thus a court may not, by injunction, order the reinstatement of a principal officer the President has removed. Accordingly, when principal officers have been removed from their posts, they generally have challenged that removal in suits for back pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349-351 (1958) (same). That rule reflects the obvious Article II problems that arise if a court attempts to reinstate—that is,

---

officers may be "an available remedy." *Aviel v. Gor*, 2025 WL 1600446, at *2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring). To the extent the en banc *Harris* decision is relevant, the Supreme Court's decision in *Wilcox* confirms that "the removals at issue * * * were likely lawful," *id*. at *2 n.2, and that holding supplies an independent basis for concluding that the government is likely to prevail.

reappoint—a principal executive officer removed by the President. Even if an improperly removed officer is entitled to some legal remedy, the President cannot be compelled to retain the services of a principal officer whom he has removed from office.

The injunction reinstating plaintiffs also exceeds the scope of the district court's equitable powers. A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is * * * well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a *federal* officer" reflect "a traditional limit upon equity jurisdiction"); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful

17

removal of a subordinate appointee, nor restrain the appointment of another.").

The district court's order cannot be squared with these precedents. The court concluded that it could provide declaratory relief that the removals were "unlawful," Dkt. 29 at 1, and that it could grant equitable relief that did not enjoin the President, Dkt. 28 at 23. But the court's declaration that plaintiffs "remain members of the" NCUA Board and the President may remove them before the end of their terms in 2027 and 2029 "only for cause," Dkt. 29 at 1, goes well beyond limited declaratory relief and constitutes full reinstatement. That is particularly true when viewed next to the injunctive relief granted by the Court prohibiting defendants other than the President from "removing Harper and Otsuka from their offices without cause or in any way treating Harper and Otsuka as having been removed from office." *Id.* at 1. The only way to read the district court's order is as *de jure* reinstatement. However styled, an order reinstating a principal officer removed by the President violates Article II.

Furthermore, the district court's reliance on *Swan* and *Severino* is also misplaced. In neither case did this Court review, much less sustain, an order like the ones presented here. Rather, the Court considered only its *jurisdiction* over an official's challenge to his removal. At most those cases

18

can be read to stand for the proposition that equitable relief might be available to require a subordinate officer to allow a plaintiff to exercise some of the privileges of the office such as by "including [him] in Board meetings," or "giving him access to his former office." *Swan*, 100 F.3d at 980; *see also Severino*, 71 F.4th at 1043. The order issued by the district court here goes well beyond such *de facto* relief; it puts plaintiffs back in office and orders that they shall continue to serve as a *de jure* Board Members for years.

Moreover, in both *Swan* and *Severino*, the Court recognized that even *de facto* relief—an order directing subordinate officials to treat the officer as not having been removed—might not ultimately be available even if the plaintiff were to prevail on the merits. In *Swan*, the Court recognized that the President could "undercut [the] relief" were he "to insist that" his preferred replacement "occupy the position," 100 F.3d at 980-81, and in *Severino*, the Court noted other potential obstacles and relied on the fact that "at the motion to dismiss stage," the plaintiff needed only to "plausibly allege that relief could be afforded," 71 F.4th at 1043.

The sole issue addressed in *Severino* and *Swan* was whether the limits on the Court's equitable power against the President made the asserted injury non-redressable. *See Severino*, 71 F.4th at 1042 ("[O]ur

jurisdiction does not depend on deciding whether an injunction ordering a presidential appointment would be available or appropriate."). Those cases cannot be read to have rejected the separate longstanding principle that equitable power may not be used to "restrain by injunction the removal of a [public] officer," *In re Sawyer*, 124 U.S. at 212, a principle not briefed or addressed in either case. *Cf. Schindler Elevator Corp. v. Washington Metropolitan Area Transit Authority*, 16 F.4th 294, 299 (D.C. Cir. 2021) (an appellate decision in which a defect "is neither noted nor discussed * * * does not stand for the proposition that no defect existed").

## B. The Remaining Factors Favor A Stay

The equitable factors likewise weigh decisively in the government's favor, and "the public interest and balance of equities factors merge" where, as here, "the government is the party" against whom an injunction is sought. *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021). The Supreme Court has emphasized that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Boyle* Order at 1 (quoting *Wilcox*, 145 S. Ct. at 1415). While the Supreme Court's stay orders do not definitively resolve the merits, they are binding precedent on how to apply the stay factors,

20

*Boyle* Order at 1, as this Court recently acknowledged, *see Grundmann* Order at 2; *LeBlanc* Order at 2 ("Injunctions that require the President to work with removed principal officers interfere with his constitutional power to supervise the Executive Branch" and "inflict[] irreparable injury"). A stay is equally warranted here.

As discussed above, the district court's order works an extraordinary harm to the President's authority to exercise "all of" "the 'executive Power'" of the United States. *Seila Law*, 590 U.S. at 203. Because of that order, two people the President has chosen to remove from office may exercise executive power over the President's objection. Indeed, because the NCUA Board consists of only three Members, 12 U.S.C. § 1752a(b)(1), the reinstated plaintiffs now constitute a majority of the agency and could take decisive action contrary to the President's judgment. *See* Dkt. 33 at 5-6 (plaintiffs' representation that "they participated in [an] NCUA Board meeting" the morning of July 24, 2025). Indeed, when a district court ordered removed Commissioners of the CPSC to be reinstated, those Commissioners immediately sought to undo "nearly all votes taken by the CPSC since" their removal and to fire staff hired to carry out Executive Orders. *See* Application for Stay, *Trump v. Boyle*, 25A11 (U.S. July 2, 2025). The Supreme Court appropriately stayed that reinstatement order,

21

recognizing that the injunctive factors all warranted a stay, and that its decision "inform[s] how a court should exercise its equitable discretion in like cases." *Boyle* Order at 1.

By contrast, plaintiffs will not be irreparably injured by a stay. Although their removals deprive plaintiffs of employment and salary, such consequences ordinarily do not amount to irreparable injury "however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). Thus, the traditional suit in such cases has been a "backpay actio[n] for damages," not interim reinstatement, *Harris v. Bessent*, 2025 WL 1021435, at *6 (Rao, J., dissenting), and a stay pending appeal will not prevent plaintiffs from seeking or obtaining such relief. Any harm arising from plaintiffs' inability to fulfill statutory duties is not irreparable; those duties are vested in plaintiffs' former office, and they have no personal right to exercise the powers of an office after removal. In light of these considerations, the Supreme Court had no difficulty determining that a stay was necessary "to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation." *Wilcox*, 145 S. Ct. at 1415. This Court should do the same.

22

## CONCLUSION

This Court should stay the district court's order pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

SHARON SWINGLE
LAURA E. MYRON
 */s/ Daniel Aguilar*
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

23

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,792 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Daniel Aguilar*
Daniel Aguilar

**Attachment A**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TODD M. HARPER, *et al.*,

       *Plaintiffs*,

   v.

SCOTT BESSENT, *et al.*,

       *Defendants*.

Civil Action No. 25-01294 (AHA)

## <u>Order</u>

For the reasons stated in the accompanying memorandum opinion, Plaintiffs' motion for summary judgment, ECF No. 3, is granted, and Defendants' cross motion for summary judgment, ECF No. 11, is denied. Plaintiffs' motion for preliminary injunction, ECF No. 3, and motion for expedition, ECF No. 4, are denied as moot.

The Court declares the terminations of Plaintiffs Todd M. Harper and Tanya F. Otsuka unlawful. Harper and Otsuka remain members of the National Credit Union Administration ("NCUA") Board and may be removed by the President prior to the expiration of their terms only for cause.

The Court further orders that Defendants Scott Bessent, Larry Fazio, Kyle S. Hauptman, and Trent Morse, as well as their subordinates, agents, and employees, are enjoined, during Harper's and Otsuka's terms as members of the NCUA Board, from removing Harper and Otsuka from their offices without cause or in any way treating Harper and Otsuka as having been removed from office, from impeding in any way their ability to fulfill their duties as members of the NCUA Board, and from denying or obstructing their authority or access to any benefits or resources of

their offices. Those defendants and their subordinates, agents, and employees shall provide Harper and Otsuka with access to the necessary government facilities and equipment so that they may carry out their duties during their terms as members of the NCUA Board.

The Clerk of Court is directed to close the case.

_____
AMIR H. ALI
United States District Judge

Date:   July 22, 2025

**Attachment B**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TODD M. HARPER, *et al.*,

       *Plaintiffs*,

   v.

SCOTT BESSENT, *et al.*,

       *Defendants*.

Civil Action No. 25-01294 (AHA)

## **Memorandum Opinion**

This case concerns the President's firing of two Board members of the National Credit Union Administration ("NCUA"), an independent agency that functions much like the Federal Reserve and Federal Deposit Insurance Corporation ("FDIC"), except for credit unions rather than banks. The NCUA is the lender of last resort for, regulates, and can issue penalties to credit unions, like the Federal Reserve does for banks. The NCUA also administers the national insurance fund for credit unions, like the FDIC does for banks.

In the 1970s, Congress decided to make the NCUA similar to the Federal Reserve and FDIC not just in function but in form, too. On the morning of March 10, 1976, the NCUA's Administrator—then, a single agency head serving "at the pleasure of the President"—appeared before the Senate Banking Subcommittee on Financial Institutions to discuss possible restructuring of the NCUA. The Administrator testified that his "day to day" tenure meant "you don't know whether you're going to take a position that would be your last day in office or not." *Restructuring the National Credit Union Administration: Hearing on S. 1475 Before the Subcomm. on Fin. Insts. of the S. Comm. on Banking, Hous. & Urb. Affs.*, 94th Cong. 10 (1976) (statement of Herman

Nickerson, Jr., Adm'r, Nat'l Credit Union Admin.). A few hours after the hearing, President Ford summoned the Administrator to the White House and asked for his resignation. *See* S. Rep. No. 94-751, at 4 (1976); 122 Cong. Rec. 6225 (1976) (statement of Sen. Thomas J. McIntyre).

Congress then enacted legislation that restructured the agency. In 1978, it passed a law replacing the NCUA's single Administrator and "advisory board" with a formal, governing board structure. Congress removed the statutory text saying that agency leadership served "at the pleasure of the President." And it provided that the Board's three members would serve fixed, staggered six-year terms with no more than two members affiliated with the same political party.

Nearly fifty years later, the President summarily fired two NCUA Board members, Todd M. Harper and Tanya F. Otsuka. Harper and Otsuka filed this action challenging their removals as unlawful and seeking reinstatement to their positions. For its part, the government concedes the President lacked any cause for the terminations. The government argues instead that the President maintains absolute authority to remove NCUA Board members at will, and that reinstatement is not an available remedy. These arguments—which the government all but concedes would apply equally to the Chair of the Federal Reserve and FDIC Board members—are unavailing.

The statutory text and context, and the structure and function of the NCUA, make clear Congress restricted the President's authority to fire NCUA Board members. And Congress did so consistent with the separation of powers because the NCUA Board fits comfortably within the traditional model of a multimember expert agency that does not wield substantial executive power. *See Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Under governing Circuit precedent, reinstatement is available when the President unlawfully removes an executive officer and proper here. The Court accordingly grants the plaintiffs' motion for summary judgment and denies the government's cross motion.

2

## I.     Background

In 1970, through amendments to the Federal Credit Union Act ("the NCUA statute"), Congress created the NCUA "for the supervision of federally chartered credit unions." Act of Mar. 10, 1970, Pub. L. No. 91-206, 84 Stat. 49, 49. Soon after, Congress created the National Credit Union Share Insurance Fund, which "insures the accounts of federally chartered credit unions and of many state chartered credit unions," and designated the NCUA to administer the insurance fund. *Swan v. Clinton*, 100 F.3d 973, 975 (D.C. Cir. 1996) (citing 12 U.S.C. §§ 1781–1790(c)).

In its original form, the NCUA "was led by a single Administrator with assistance from an advisory board composed of a Chairman and one member from each of the federal credit union regions." *Id.* at 974–75. The Administrator and the advisory board members were appointed by the President, with the advice and consent of the Senate. *Id.* at 975. The Administrator and the advisory board chair served "at the pleasure of the President." *Id.* (quoting Act of Mar. 10, 1970, 84 Stat. at 50).

A few years later, Congress amended the NCUA statute through the Financial Institutions Regulatory and Interest Rate Control Act of 1978, Pub. L. No. 95-630, 92 Stat. 3641. *Swan*, 100 F.3d at 975. The 1978 amendments replaced the Administrator and advisory board with a formal, governing Board made up of three members. 12 U.S.C. § 1752a(b)(1). Congress required that each member of the Board be appointed by the President, with the advice and consent of the Senate, and allowed the President to designate one member as chair. *Id.* Congress removed any reference to leadership serving "at the pleasure of the President." It provided that members would be appointed to fixed, six-year terms that are staggered, so vacancies arise every two years. *Id.* § 1752a(c). It also required that members be "broadly representative of the public interest," with no more than two members affiliated with the same political party. *Id.* § 1752a(b)(1). In making appointments, the President must "give consideration to individuals who, by virtue of their

3

education, training, or experience relating to a broad range of financial services, financial services regulation, or financial policy, are especially qualified to serve on the Board." *Id.* § 1752a(b)(2)(A). The amendments also expanded the responsibilities of the NCUA. *Swan*, 100 F.3d at 975. Congress created the National Credit Union Central Liquidity Facility, which "advances funds to member credit unions so that they are able to meet their liquidity needs." *Id.* The NCUA manages that facility as well. *Id.* (citing 12 U.S.C. §§ 1795–1795k); *see* 12 C.F.R. § 725.1.

Today, the NCUA's primary mission is "[p]rotecting the system of cooperative credit and its member-owners through effective chartering, supervision, regulation, and insurance." *Mission and Values*, Nat'l Credit Union Admin., https://ncua.gov/about/mission-values (last visited July 22, 2025). The NCUA Board is authorized "to prescribe rules and regulations to accomplish" the agency's obligations and "to manage the NCUA itself." *Swan*, 100 F.3d at 983. The Board may also initiate administrative proceedings against federally insured credit unions and affiliated parties, issue cease-and-desist orders, and remove credit union officers and directors for unsafe practices or breaches of fiduciary duty. 12 U.S.C. § 1786.

The President nominated and the Senate confirmed Harper and Otsuka to terms on the NCUA Board that began in 2022 and 2024, respectively. ECF No. 3-2 ¶¶ 4, 7. In April 2025, they both received emails from a White House official that stated: "On behalf of President Donald J. Trump, I am writing to inform you that your position on the National Credit Union Administration is terminated, effective immediately." *Id.* ¶¶ 9–12. Neither email provided a basis. *Id.* ¶ 13.

Harper and Otsuka filed this action asserting their removals were *ultra vires* and violated the Administrative Procedure Act and the separation of powers. ECF No. 1 ¶¶ 29–36, 39–41. They seek a declaration that their terminations were unlawful and an injunction reinstating them as

Board members. ECF No. 3-7. Each side has moved for summary judgment, and the Court held a hearing on June 12, 2025. ECF Nos. 3, 11.[1]

## II.   Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute "is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). The reviewing court "must view the evidence in the light most favorable to the nonmoving party . . . , draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

The Court first addresses whether Congress insulated NCUA Board members from at-will removal and concludes that the statutory text and context, as well as the NCUA's structure and function, confirm it did. The Court then addresses whether such protection is consistent with the separation of powers and concludes it is because the NCUA's multimember expert Board does not wield substantial executive power. *See Humphrey's Executor*, 295 U.S. 602. Finally, the Court considers the proper remedy and, applying Circuit precedent, concludes reinstatement is available and appropriate here.

---

[1]    The plaintiffs initially sought a preliminary injunction, but have since withdrawn that request in favor of resolution of the merits. ECF No. 10 at 2.

### A.  Congress Protected NCUA Board Members From At-Will Removal

The first dispute between the parties is whether, in amending the NCUA statute in 1978 after President Ford asked for the Administrator's resignation, Congress afforded Board members protection from at-will removal by the President.

The government says no. It argues that NCUA Board members are still removable at the pleasure of the President because Congress did not add express language stating Board members could be removed only for cause. The government's argument would be compelling in many contexts. After all, "[w]hen a statute does not limit the President's power to remove an agency head," courts "generally presume that the officer serves at the President's pleasure." *Collins v. Yellen*, 594 U.S. 220, 248 (2021); *see also Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. __, __ S. Ct. __, No. 24-316, 2025 WL 1773628, at *13 (U.S. June 27, 2025) ("The Court has said that to 'take away' the power of at-will removal from an appointing officer, Congress must use 'very clear and explicit language.'" (quoting *Shurtleff v. United States*, 189 U.S. 311, 315 (1903))). Here, it is undisputed that the NCUA statute does not contain a provision that expressly limits the President's ability to remove the agency's Board members.

Yet both the Supreme Court and D.C. Circuit have been clear that the absence of an express provision should not be treated as dispositive, and agency heads may enjoy for-cause removal protection even in the absence of an express statutory provision. *See, e.g.*, *Wiener v. United States*, 357 U.S. 349, 356 (1958) (concluding President could not remove members of War Claims Commission at will, even though statute was silent on removal protection); *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993) (explaining Federal Election Commission was "likely correct" that President could remove commissioners only for cause despite statute's silence as to removal protection). Indeed, as to the NCUA specifically, the D.C. Circuit has instructed that "[t]he lack of an express for cause restriction does not dispose of the

question of whether NCUA Board members are entitled to removal protection." *Swan*, 100 F.3d at 981. Rather, "an examination of the NCUA's function, statutory language and legislative history may demonstrate that Congress nonetheless intended such removal protection to exist." *Id.* In accordance with Circuit precedent, this Court looks to the NCUA statute's "plain text" and the agency's "statutory structure and function" to determine whether Congress imposed a removal restriction. *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023).

The Court starts with the statutory text and context. As mentioned, prior to 1978, the statute provided that the NCUA was run by a single Administrator, assisted by an advisory board with a chair. Act of Mar. 10, 1970, 84 Stat. at 50. The Administrator and the advisory board chair did not have fixed terms, and the statute explicitly stated that both served "at the pleasure of the President." *Id.* In moving to a board structure, Congress modified the text related to tenure in two ways. First, Congress specified that, instead of indefinite tenure, Board members would have fixed, six-year terms. 12 U.S.C. § 1752a(c). Providing for fixed terms would not be enough on its own. *Severino*, 71 F.4th at 1047 ("A defined term of office, standing alone, does not curtail the President's removal power during the office-holder's service."). But here, that textual change does not stand on its own. As the D.C. Circuit explained, the legislative history "is revealing" and shows "the Senate Banking Committee believed the six year terms would protect NCUA Board members from at will removal during their appointed terms." *Swan*, 100 F.3d at 982; *see also id.* (referring to Senate Report noting that the NCUA Administrator "is the only Federal financial regulator to serve at the pleasure of the President without tenure" and explaining that "the committee recognizes the need to provide tenure for the Administrator in order to strengthen the [NCUA]'s status as an independent agency" (alteration in original) (quoting S. Rep. No. 94-751, at 3–4)). While the legislative history itself is "obviously not determinative," it is "nonetheless to some degree instructive on Congress' intent"

to create removal protection in the wake of the Administrator's resignation. *Id.* at 983. As Judge Silberman put it, Congress's "most obvious purpose" in adding a term of appointment is "to provide the incumbent with some measure of tenure or security against arbitrary removal." *Id.* at 990 (Silberman, J., concurring).

In any event, adding a term was not the only change Congress made to the text in the 1978 amendments. Congress's second change concerning the President's removal authority was to remove the statute's prior text stating that agency leadership served "at the pleasure of the President." *Id.* at 982 (majority opinion); *see* 12 U.S.C. § 1752a. In arguing that Board members nonetheless serve at the pleasure of the President, the government asks this Court to read that language back into the statute even though Congress took it out. *But see Hazardous Waste Treatment Council v. EPA*, 861 F.2d 270, 276 (D.C. Cir. 1988) ("When a statutory provision is deleted in a subsequent reenactment, the omitted term cannot be read into the later statute."). As the D.C. Circuit put it, albeit without needing to resolve the issue, these textual changes provide "support for inferring some removal protection." *Swan*, 100 F.3d at 982.[2]

The other way "Congress may clearly indicate its intent to restrict removals" is "through the statutory structure and function of an office." *Severino*, 71 F.4th at 1044. Congress has done that with the NCUA. In *Severino*, the D.C. Circuit identified several structural features in rejecting

---

[2]     The government asks the Court to overlook Congress's deletion of "at the pleasure of the President" because the 1978 amendments "completely restructured the NCUA." ECF No. 11-1 at 8. According to the government, the Court thus cannot "draw inferences from Congress's choice to line-item remove certain provisions from a statute." *Id.* The notion that Congress would not have acted intentionally here is dubious to begin with given the import of the topic at issue—the very leadership of the agency. And it is simply not credible in light of the relevant factual background; as the D.C. Circuit detailed, Congress amended the text in response to concerns about the NCUA's independence. *Swan*, 100 F.3d at 982–83; *see also, e.g.*, *Fischer v. United States*, 603 U.S. 480, 491 (2024) (interpreting statute's subsection as limited "in light of the history of the provision").

for-cause removal protection for members of the council supervising the Administrative Conference of the United States: roughly half of the council's members are subject to at-will removal based on their other positions in the executive branch; members serve three-year terms, so "no member could outlast a President"; and non-governmental members are unpaid. *Id.* at 1049. Congress thus "left no structural or contextual clues that protection from removal was integral, or even desirable, to the performance of Council members within an advisory organization housed squarely in the Executive Branch." *Id.* at 1050.

The structure of the NCUA Board, on the other hand, closely tracks the traditional multimember board held to have removal protection in *Humphrey's Executor*. The *Humphrey's Executor* Court "identified several organizational features that helped explain its characterization of the [Federal Trade Commission ("FTC")] as non-executive." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 216 (2020). The 1935 FTC was composed of five members, with no more than three from the same political party; it "was designed to be 'non-partisan' and to 'act with entire impartiality.'" *Id.* (quoting *Humphrey's Executor*, 295 U.S. at 624). "The FTC's duties were 'neither political nor executive,' but instead called for 'the trained judgment of a body of experts' 'informed by experience.'" *Id.* (quoting *Humphrey's Executor*, 295 U.S. at 624). "And the Commissioners' staggered, seven-year terms enabled the agency to accumulate technical expertise and avoid a 'complete change' in leadership 'at any one time.'" *Id.* (quoting *Humphrey's Executor*, 295 U.S. at 624); *see also Severino*, 71 F.4th at 1049 (noting that staggered terms "promote the independence, autonomy, and non-partisan nature of an agency" (internal quotation marks and citation omitted)).

In its 1978 amendments, Congress reconstituted the NCUA Board to share the structural characteristics from *Humphrey's*. The Board has three members appointed by the President and

confirmed by the Senate, with no more than two members from the same political party. 12 U.S.C. § 1752a(b)(1). The Board members must be "broadly representative of the public interest" and, in making appointments, the President must "give consideration to individuals who, by virtue of their education, training, or experience relating to a broad range of financial services, financial services regulation, or financial policy, are especially qualified to serve on the Board." *Id.* § 1752a(b)(1), (2)(A). And Congress gave the Board members staggered, six-year terms. *Id.* § 1752a(c). The NCUA Board's structure accordingly indicates that Congress restricted the President's removal power.

So too does the NCUA's function support removal restrictions. The D.C. Circuit has said when Congress assigns an agency "quasi-judicial or quasi-legislative functions that are deemed to be operationally incompatible with at-will Presidential removal, that can be a relevant signal that Congress meant for members of that agency to be shielded from Presidential removal, even without an explicit textual statement to that effect." *Severino*, 71 F.4th at 1047. In *Humphrey's Executor*, for instance, the Supreme Court held that the FTC acted "'as a legislative agency' in reporting to Congress and 'as an agency of the judiciary' in holding administrative hearings, and that the 'character' of both functions is inconsistent with allowing at-will removal by the President." *Id.* (quoting *Humphrey's Executor*, 295 U.S. at 628–29). The Court took a functional approach again in *Wiener*, concluding that the War Claims Commission "could not fulfill its duty to fairly apply 'evidence and governing legal considerations' to resolve 'the merits of each claim,' without some removal protections." *Id.* (quoting *Wiener*, 357 U.S. at 355).

In *Severino*, the D.C. Circuit distinguished those agencies from the council of the Administrative Conference, whose principal role is to provide advice to the executive branch. *Id.* at 1048. Congress created the Conference "for the purpose of helping '[f]ederal agencies, assisted

by outside experts' to 'study mutual problems, exchange information, and develop recommendations.'" *Id.* (alteration in original) (quoting 5 U.S.C. § 591(1)). While the Conference may inform the other branches about certain aspects of administrative procedure, "the overwhelming majority of the Conference's work focuses on and contributes to the internal workings of the Executive Branch." *Id.*; *see also id.* ("The Executive Branch is the planet around which all of the Conference's responsibilities revolve."). And the Conference does not exercise anything resembling the "quasi-judicial functions" that were essential to the Supreme Court's holdings in *Humphrey's Executor* and *Wiener*. *Id.* In short, the Conference has "no adjudicatory or legislative features that would clearly signal a need for some measure of independence from Presidential control." *Id.* at 1049.

That cannot be said of the NCUA Board, which exercises both quasi-judicial and quasi-legislative functions. The Board is adjudicatory, conducting formal administrative proceedings. That includes proceedings to determine whether a credit union should be ordered to cease and desist from engaging in "an unsafe or unsound practice" and to take affirmative action to correct the practice. 12 U.S.C. § 1786(e). And the Board can remove credit union officers and directors in certain circumstances, upon notice and a hearing. *Id.* § 1786(g). These proceedings are conducted before administrative law judges under uniform rules of practice and procedure, and the Board then renders a final decision. 12 C.F.R. §§ 747.1, 747.5, 747.40. The Board's decisions are appealable to the D.C. Circuit or the court of appeals for the circuit in which the credit union's principal office is located. 12 U.S.C. § 1786(j)(2). The Board thus has several "judicial functions"

that suggest "Congress meant to sheath 'the Damocles' sword of removal by the President'" during the Board members' terms. *See Severino*, 71 F.4th at 1047 (quoting *Wiener*, 357 U.S. at 356).[3]

The NCUA Board is quasi-legislative as well. It exercises its statutory authority to prescribe rules and regulations for the administration of the Federal Credit Union Act. 12 U.S.C. § 1766(a); *see* Cong. Rsch. Serv., IF11713, *Introduction to Financial Services: Credit Unions* 2 (2025) (discussing certain rules implemented by NCUA). The Board also submits a yearly report to Congress and the President summarizing the operations of the NCUA and providing information for Congress "to review the financial program approved by the Board." 12 U.S.C. § 1752a(d). So, like the FTC in *Humphrey's Executor*, "[i]n administering the provisions of the statute . . . , that is to say, in filling in and administering the details embodied by that general standard," the NCUA Board "acts in part quasi legislatively and in part quasi judicially." *See* 295 U.S. at 628; *see also id.* (noting FTC's role in "making investigations and reports thereon for the information of Congress . . . in aid of the legislative power"). The Board "is an administrative body created by Congress to carry into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed." *Id.*

The "absolute freedom from Executive interference" the Supreme Court deemed essential in *Humphrey's Executor* and *Wiener* is also critical to the functioning of the NCUA. *See Severino*, 71 F.4th at 1049 (quoting *Wiener*, 357 U.S. at 353); *see also Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at *2 (D.D.C. Nov. 14, 1983) (absent express removal provision, "this Court must ascertain whether Congress required the [U.S. Commission on Civil Rights] Commissioners to act

---

[3]    In *Swan*, the government observed: "The [NCUA] Board is authorized to adjudicate issues relevant to the exercise of its authority to terminate the insured status of a credit union, issue cease and desist orders, remove or suspend credit union officials from office, and assess civil monetary penalties." Brief for the Appellees, *Swan*, 100 F.3d 973 (No. 96-5193), 1996 WL 34482875, at *27 (citing 12 U.S.C. § 1786).

independently, with 'absolute freedom from Executive interference,' in the discharge of their duties" (quoting *Wiener*, 357 U.S. at 353)). As the D.C. Circuit put it in *Swan*: "Independence from presidential control is arguably important if agencies charged with regulating financial institutions, such as the NCUA, are to successfully fulfill their responsibilities; people will likely have greater confidence in financial institutions if they believe that the regulation of these institutions is immune from political influence." 100 F.3d at 983. The court continued: "The NCUA's function may therefore provide further evidence indicating that Board members enjoy removal protection during their appointed terms." *Id.* at 983–84. Although *Swan* ultimately did not decide the question because it concerned the removal of a holdover Board member rather than one serving a full term, this Court finds its reasoning persuasive. The function of the NCUA provides support for removal protections.

The government's arguments to the contrary are rather superficial. First, the government says the Supreme Court definitively resolved whether NCUA Board members are protected from at-will removal in *Collins*. ECF No. 11-1 at 10–11. That case concerned the Federal Housing Finance Agency ("FHFA"), which has a single director. *Collins*, 594 U.S. at 226–27. The statute at issue "expressly restricted the President's power to remove a confirmed Director but said nothing of the kind with respect to an Acting Director." *Id.* at 248. The plaintiffs asserted that the statute should be read to restrict the removal of an acting director based on language describing the FHFA as an "independent agency of the Federal Government." *Id.* (emphasis omitted) (quoting 12 U.S.C. § 4511(a)). Rejecting that argument, the Court noted that "Congress has described many agencies as 'independent' without imposing any restriction on the President's power to remove the agency's leadership," including the NCUA. *Id.* at 249. The Court's observation that use of the word "independent" does not necessitate or always accompany removal restrictions does not bear

13

on, let alone decide, this case. And the notion that the Court intended its reasoning to foreclose statutory interpretation of the NCUA statute, without any analysis, is strained.[4]

Second, rather than meaningfully dispute that the NCUA Board exercises quasi-judicial and quasi-legislative functions, the government asks the Court in a footnote to overlook *Severino*'s focus on function, saying that it is in tension with *Collins*. ECF No. 11-1 at 11 n.5; *see also id.* at 15 (asserting that "legislative power is vested exclusively in Congress . . . and judicial power in the federal courts"). Contrary to the government's argument, the Court does not see tension between *Severino* and *Collins*, which was decided two years earlier. The Supreme Court simply held in *Collins* that there were "no grounds for an exception in this case" to the general presumption that the President can remove executive officers at will. 594 U.S. at 250. While the Court distinguished *Wiener* on the basis that it concerned "an adjudicatory body" with "a unique need for 'absolute freedom from Executive interference,'" it did not set out any rule that would foreclose *Severino*'s method of analysis. *Id.* at 250 n.18 (quoting *Wiener*, 357 U.S. at 353). This Court is bound by Circuit precedent and cannot ignore *Severino*'s holding that an agency's quasi-judicial and quasi-legislative functions are relevant to the question whether Congress intended to impose removal restrictions. *See* 71 F.4th at 1047.

In sum, the text and history of the NCUA statute, along with the structure and function of the NCUA Board, confirm Congress restricted the President's power to remove Board members.

---

[4]    The Court also referred to several other agencies' enabling statutes, including the Peace Corps, the Defense Nuclear Facilities Safety Board, the Commodity Futures Trading Commission, the Farm Credit Administration, and the Railroad Retirement Board. *Collins*, 594 U.S. at 249. The government's position would mean that the Court, in a single sentence, definitively resolved the interpretation of each statute without any analysis of the text, structure, or function applicable to the particular agency. *Cf. Seila Law*, 591 U.S. at 215 ("[T]he contours of the *Humphrey's Executor* exception depend upon the characteristics of the agency before the Court.").

### B. Congress's Removal Restriction For NCUA Board Members Does Not Violate The Separation Of Powers

The Court next considers whether Congress's removal restriction is constitutional. Article II provides the President shall "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. "To fulfill that duty, the President generally must be able to 'control[] those who execute the laws' on his behalf." *Severino*, 71 F.4th at 1044 (alteration in original) (quoting *Seila Law*, 591 U.S. at 213). Without the power to remove executive officials, "the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 514 (2010)). At the same time, the Supreme Court has recognized "two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 215. The first exception applies to "multimember expert agencies that do not wield substantial executive power." *Id.* at 218. That exception, established in *Humphrey's Executor* and reaffirmed in *Wiener*, is the one the plaintiffs rely on in this case.[5]

More recently, in *Seila Law*, the Court held unconstitutional the for-cause removal protection enjoyed by the director of the Consumer Financial Protection Bureau ("CFPB"). The Court distinguished the CFPB from the 1935 FTC because the former was "led by a single Director who cannot be described as a 'body of experts' and cannot be considered 'non-partisan' in the same sense as a group of officials drawn from both sides of the aisle." *Id.* (quoting *Humphrey's Executor*, 295 U.S. at 624). The Court identified two constitutional defects in the design of the CFPB. First, the CFPB's structure was "almost wholly unprecedented." *Id.* at 220. The Court observed that in "only a handful of isolated incidents" had Congress provided for-cause protection

---

[5] The second exception applies to "inferior officers with limited duties and no policymaking or administrative authority" and is not relevant here. *Seila Law*, 591 U.S. at 218. The plaintiffs do not argue NCUA Board members are inferior officers.

to a single principal officer. *Id.* (internal quotation marks and citation omitted). So the CFPB's single-director model represented "an innovation with no foothold in history or tradition." *Id.* at 222. Second, and relatedly, the Court found that the single-director design was "incompatible with our constitutional structure," which "scrupulously avoids concentrating power in the hands of any single individual." *Id.* at 222–23. The Court therefore concluded that the CFPB's leadership by a single director with for-cause removal protection violated the separation of powers. *Id.* at 232.

The Court was careful to emphasize, however, that it was "not revisit[ing] *Humphrey's Executor* or any other precedent." *Id.* at 228. Indeed, the government concedes *Humphrey's Executor* "remains good law." ECF No. 20 at 29. The NCUA Board fits at the core of the *Humphrey's* exception. The Board is designed in the classic pattern of a multimember, bipartisan, expert agency that does not exercise substantial executive power. As discussed above, the Board's structure closely resembles the 1935 FTC—as well as several other independent agencies—so the single director and "lack of historical precedent" that posed problems in *Seila Law* are wholly inapposite. *See* 591 U.S. at 220 (citation omitted).[6]

The government asserts that the NCUA Board does not fit within the *Humphrey's* exception because "unlike the 1935 FTC . . . , the NCUA exercises significant executive power." ECF No. 11-1 at 13. It points to several powers to support this argument, but none bring the NCUA Board outside the parameters of the exception. *See id.* at 13–14. At the hearing, the government emphasized that the NCUA investigates and prosecutes violations of the Federal Credit Union Act

---

[6]    In *Seila Law*, the Supreme Court emphasized that the removal protection at issue was "even more problematic" because the CFPB director served a five-year term, so some Presidents might be denied the opportunity to "shape [the agency's] leadership and thereby influence its activities." 591 U.S. at 225. NCUA Board members serve staggered six-year terms, meaning that vacancies arise every two years—and the President designates one member as chair. There is no possibility that a President serving a four-year term will not have the opportunity to shape the agency's leadership.

and related regulations, and "can issue daunting monetary penalties." ECF No. 20 at 28; *see also* ECF No. 11-1 at 14 (noting that NCUA Board may impose daily penalties of up to $5,000 for violations and up to $1,000,000 if the violation is "knowing or reckless" (citing 12 U.S.C. § 1786(k))). It also highlighted that the NCUA prescribes rules and regulations "fleshing out numerous federal statutes with implications for broad swaths of the American economy." ECF No. 20 at 28. According to the government, "those activities are quintessential exercises of executive power." *Id.*

The NCUA Board does not exercise the kind of substantial executive power that would warrant a departure from *Humphrey's Executor*. Indeed, the Board does not exercise any more significant executive power than the 1935 FTC as characterized by the *Humphrey's* Court. The FTC Act empowered the FTC to prevent persons and corporations "from using unfair methods of competition in commerce." *Humphrey's Executor*, 295 U.S. at 620. To carry out that statutory obligation, the FTC could issue complaints, enter cease-and-desist orders after a hearing, and apply to the appropriate court of appeals for enforcement of those orders. *Id.* at 620–21. The statute also gave the FTC "wide powers of investigation in respect of certain corporations." *Id.* at 621. If the 1935 FTC did not exercise sufficient executive power to necessitate at-will removal by the President, neither does the NCUA Board. *See also Slaughter v. Trump*, __ F. Supp. 3d __, No. 25-cv-909, 2025 WL 1984396, at *11–12 (D.D.C. July 17, 2025) (discussing 1935 FTC's powers and noting that the *Humphrey's Executor* Court "was plainly aware of the FTC's investigatory, adjudicatory, and rulemaking abilities and yet it upheld the FTC Act's removal protections as constitutional"), *appeal docketed*, No. 25-5261 (D.C. Cir. July 18, 2025).

That conclusion is reinforced by the particular importance of independence for agencies that play key roles as financial regulators. To reiterate the D.C. Circuit in *Swan*: "Independence

17

from presidential control is arguably important if agencies charged with regulating financial institutions, such as the NCUA, are to successfully fulfill their responsibilities; people will likely have greater confidence in financial institutions if they believe that the regulation of these institutions is immune from political influence." 100 F.3d at 983. The Supreme Court has since indicated that removal protections for certain financial regulators may be permissible. *See Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) (rejecting argument that decision necessarily implicated constitutionality of for-cause removal protection for Federal Reserve Board of Governors because the Fed "is a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States"); *Seila Law*, 591 U.S. at 222 n.8 (assuming that "financial institutions like the Second Bank and the Federal Reserve can claim a special historical status"); *cf. id.* at 285 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part) ("Congress has historically given—with this Court's permission—a measure of independence to financial regulators like the Federal Reserve Board and the FTC.").

If the NCUA Board exercises substantial executive power, it is difficult to see how the same would not be true of the Federal Reserve. The Fed has broad regulatory authority. *See, e.g.*, 12 U.S.C. § 1844(b) (authorizing Federal Reserve Board "to issue such regulations and orders, including regulations and orders relating to the capital requirements for bank holding companies, as may be necessary to enable it to administer and carry out the purposes of this chapter and prevent evasions thereof"); *id.* § 1831p-1 (authorizing each "appropriate Federal banking agency" to prescribe certain standards by regulation or guideline for insured depository institutions); *see also Bd. of Governors of Fed. Rsrv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 365 (1986) (noting Federal Reserve Board's "broad regulatory authority . . . over bank holding companies to restrain the undue concentration of commercial banking resources and to prevent possible abuses related

18

to the control of commercial credit" (internal quotation marks and citation omitted)). Like the NCUA Board, the Fed is also authorized to initiate enforcement actions, issue cease-and-desist orders that are enforceable in federal court, remove officers and directors, and impose daily civil penalties up to $1,000,000. 12 U.S.C. § 1818(b)–(e), (i). The NCUA and the Fed even use the same administrative law judges to adjudicate enforcement actions. *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183, 486 (codified at 12 U.S.C. § 1818 note) (requiring the Fed, other federal banking agencies, and the NCUA to jointly establish "their own pool of administrative law judges" and "develop a set of uniform rules and procedures for administrative hearings"). In *Seila Law*, the Supreme Court distinguished the CFPB as in "an entirely different league" from other financial regulators because of its vast powers and because "it is the only agency of its kind run by a single Director"—neither distinction applies to the NCUA. *See* 591 U.S. at 222 n.8.

The government all but concedes that its position as to the NCUA would lead to the same conclusion as to the Federal Reserve, relegating its response to a footnote that states, without elaboration, that the Fed is unique because of its historical pedigree. ECF No. 11-1 at 15 n.6. At the hearing, the government declined to expand on that footnote, stating that it "do[es] not have a formal position" on the implications of its arguments for the Federal Reserve. ECF No. 20 at 27. When asked what executive power the NCUA Board wields that the Federal Reserve and the FDIC do not, the government responded again that it would not "take a position on those agencies at this time." *Id.* at 29. At the end of the day, the government does not point to any difference at all between the agencies with respect to the relevant executive power analysis. The overlap in powers wielded by the NCUA Board and the Federal Reserve, and their common role as financial

regulators, supports the conclusion that Congress can insulate NCUA Board members from at-will removal.

The Court accordingly holds that Congress's for-cause removal restrictions for NCUA Board members do not pose any constitutional problem. And because the government does not dispute that the plaintiffs were terminated without cause, those removals were unlawful.[7]

### C. The Plaintiffs Are Entitled To Declaratory And Injunctive Relief

That conclusion prompts the question of what remedy is appropriate for the unlawful removals. The plaintiffs ask the Court to declare that the President removed them unlawfully and to enjoin all the defendants—except the President—from (1) removing the plaintiffs from office; (2) treating them as having been removed; (3) denying or obstructing their access to benefits or resources of their office; (4) replacing them as Board members; or (5) recognizing any other person as a Board member in their stead. ECF No. 3-7; *see* ECF No. 3-1 at 21–24. The Court concludes that the plaintiffs are entitled to declaratory and injunctive relief.[8]

---

[7]    Because the Court concludes that the removal restrictions are constitutional, it need not reach the plaintiffs' argument that it would still be appropriate for the Court to limit removal in some way in the event of a constitutional defect. *See* ECF No. 13 at 17–19. Similarly, because the removals were *ultra vires*, the Court need not address the plaintiffs' claims that they violated the Administrative Procedure Act and the separation of powers. *See* ECF No. 1 ¶¶ 34–36, 39–41.

[8]    The plaintiffs also request mandamus relief in the alternative. ECF No. 3-1 at 24–25. The Court need not reach the issue because it grants the requested declaratory and injunctive relief, but other courts have found mandamus is likely available in similar circumstances. *See, e.g.*, *Wilcox v. Trump*, 775 F. Supp. 3d 215, 237 n.22 (D.D.C. 2025) ("[I]f injunctive relief were not available here because of adherence to the historical dividing lines of law and equity, a writ of mandamus would likely be available, and the effective relief provided to plaintiff would be the same."), *appeal docketed*, No. 25-5057 (D.C. Cir. Mar. 7, 2025); *Harris v. Bessent*, 775 F. Supp. 3d 164, 188 (D.D.C. 2025) ("Were equitable injunctive relief unavailable here, . . . the Court would not hesitate to 'vigilantly enforce federal law' and 'award[] necessary relief' through a writ of mandamus as an alternative remedy at law." (alteration in original) (quoting *DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017))), *appeal docketed*, No. 25-5055 (D.C. Cir. Mar. 4, 2025).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory judgment "rests within the sound discretion of the court" and will "ordinarily be granted only when it will either serve a useful purpose in clarifying the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980) (internal quotation marks and citation omitted).

As other courts in this District have concluded in recent cases finding the removal of independent agency members unlawful, "a declaratory judgment would serve a useful purpose to clarify the legal relations between the parties and afford relief from the underlying challenged actions." *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, __ F. Supp. 3d __, No. 25-cv-542, 2025 WL 1454010, at *25 (D.D.C. May 21, 2025) (collecting cases), *appeal docketed*, No. 25-5197 (D.C. Cir. May 29, 2025). The plaintiffs challenge their removal as members of the NCUA Board and seek clarity on whether they may resume work. The government, for its part, maintains that the President may lawfully remove NCUA Board members at will. The Court therefore exercises its discretion to provide declaratory relief.[9]

---

[9]    The government contends that declaratory relief is not available, relying primarily on *Samuels v. Mackell*, 401 U.S. 66 (1971). ECF No. 11-1 at 23–24. But the limited holding of *Samuels* was that declaratory relief "should ordinarily be denied" where a state criminal prosecution has been initiated prior to the federal lawsuit, since "the basic policy against federal interference with pending state criminal prosecutions will be frustrated as much by a declaratory judgment as it would be by an injunction." 401 U.S. at 73. The Court made clear that it was expressing "no views on the propriety of declaratory relief when no state proceeding is pending at the time the federal suit is begun." *Id.* at 74. The government also cites no controlling authority for the proposition that a court "cannot issue a declaratory judgment against the President." ECF No. 11-1 at 23 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part and concurring

The Court also finds it proper to order injunctive relief in the form of reinstatement. According to the government, injunctive relief is not available because this Court lacks the authority to reinstate principal executive officers removed by the President. ECF No. 11-1 at 16. The government suggests instead that back pay is the proper remedy for an officer who has been unlawfully removed. *Id.* Asked whether that means an award of back pay would be the only remedy for the Chair of the Federal Reserve if he were unlawfully terminated, the government declined to answer, repeating its refrain that "we don't take a position on other entities not before the Court." ECF No. 20 at 36.

The government's position and its extreme consequences find no support in D.C. Circuit precedent, which makes clear that reinstatement is available. Analyzing redressability in *Swan*, the Circuit recognized that "[a] question exists . . . as to whether a federal court has the power to grant injunctive relief against the President of the United States in the exercise of his official duties." 100 F.3d at 976. But the court did not need to reach that question because injunctive relief against officials subordinate to the President could substantially redress the plaintiff's injury. *Id.* at 979. Those subordinate officials could not officially reinstate the plaintiff, but they could accomplish "de facto" reinstatement "by treating [the plaintiff] as a member of the NCUA Board and allowing him to exercise the privileges of that office." *Id.* at 980. The court reached a similar conclusion in *Severino*, holding that it could enjoin the agency's chair to include the plaintiff in board meetings, grant him access to his former office, and allow him to cast votes "as if he were a Council member." 71 F.4th at 1043.

---

in the judgment)); *cf. Clinton v. City of New York*, 524 U.S. 417, 420–21 (1998) (affirming declaratory judgment that President's actions under Line Item Veto Act were invalid); *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 616 (D.C. Cir. 1974) (opting to issue declaratory decree against President instead of mandamus).

The same principles apply here. The Court need not enjoin the President himself—and the plaintiffs do not ask the Court to do so. Instead, injunctive relief against the other defendants, including the Chair of the NCUA Board and the agency's executive director, can accomplish de facto reinstatement. The government insists that *Swan* and *Severino* are not controlling because they concerned whether the plaintiffs had Article III standing. ECF No. 11-1 at 19 n.8; ECF No. 15 at 14. But standing is a jurisdictional requirement. *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). So the Circuit necessarily concluded in both cases that the plaintiffs could be reinstated to their offices; otherwise, the redressability prong would not have been satisfied. *See Harris v. Bessent*, No. 25-5037, 2025 WL 980278, at *44 (D.C. Cir. Mar. 28, 2025) (Millett, J., dissenting) ("Because jurisdiction in both *Swan* and *Severino* depended on holding that an injunction could issue, and both cases held that there was jurisdiction and went on to decide the merits, both cases necessarily held that an injunction could restore someone to office *de facto*."); *see also Grundmann v. Trump*, 770 F. Supp. 3d 166, 185–86 (D.D.C. 2025) (collecting cases holding that *Swan* and *Severino* stand for the proposition that de facto reinstatement is an available remedy), *appeal docketed*, No. 25-5165 (D.C. Cir. May 14, 2025).[10]

Several other courts in this District have addressed the same question in recent months and held that reinstatement is available when an executive officer is unlawfully removed by the President. *See Slaughter*, __ F. Supp. 3d at __, 2025 WL 1984396, at *17; *LeBlanc*, __ F. Supp.

---

[10]    The government's assertion that suits challenging unlawful removals have traditionally sought back pay—rather than reinstatement—disregards the type of relief requested in *Swan* and *Severino*. *See* ECF No. 11-1 at 16. As other courts have pointed out, moreover, reinstatement would not have made sense in several of the cases the government cites: the plaintiffs were deceased in both *Humphrey's Executor* and *Myers v. United States*, 272 U.S. 52 (1926); in *Wiener*, the War Claims Commission was no longer in existence. *See Grundmann*, 770 F. Supp. 3d at 186. And in any event, the Court does not lack power to issue injunctive relief "simply because the plaintiffs in *Wiener* and *Humphrey's Executor* decided to seek another remedy." *Harris*, 775 F. Supp. 3d at 185 n.15.

3d at __, 2025 WL 1454010, at *27; *Grundmann*, 770 F. Supp. 3d at 187; *Wilcox v. Trump*, 775 F. Supp. 3d 215, 237 (D.D.C. 2025), *appeal docketed*, No. 25-5057 (D.C. Cir. Mar. 7, 2025); *Harris v. Bessent*, 775 F. Supp. 3d 164, 184 (D.D.C. 2025), *appeal docketed*, No. 25-5055 (D.C. Cir. Mar. 4, 2025). The en banc D.C. Circuit, citing a panel dissent from Judge Millett, has also held in the stay context that the government failed to show a strong likelihood of success on its claim that there was "no available remedy" for two unlawfully removed officials. *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025) (en banc); *see Harris*, 2025 WL 980278, at *43–46 (Millett, J., dissenting).[11]

Having concluded that injunctive relief is available, the Court turns to the requirements for a permanent injunction. To obtain that relief, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). All those factors are satisfied in this case.

To start, the plaintiffs have demonstrated irreparable injury. A federal employee seeking injunctive relief must show "irreparable injury 'sufficient in kind and degree to override the factors cutting against the general availability of preliminary injunctions [such as disruption of the

---

[11]   The Supreme Court granted the government's motion for a stay pending appeal in *Wilcox* and *Harris*, concluding that it was likely to show the agencies in question "exercise considerable executive power." *Wilcox*, 145 S. Ct. at 1415. The D.C. Circuit has also granted a stay pending appeal in *Grundmann* and *LeBlanc*. *See Grundmann v. Trump*, No. 25-5165, 2025 WL 1840641, at *1 (D.C. Cir. July 3, 2025); *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-5197, 2025 WL 1840591, at *1 (D.C. Cir. July 1, 2025). The Supreme Court and the Circuit did not address the issue of reinstatement in those decisions.

administrative process] in Government personnel cases.'" *Berry*, 1983 WL 538, at *5 (alteration in original) (quoting *Sampson v. Murray*, 415 U.S. 61, 84 (1974)). Again, several courts have recognized irreparable harm in similar cases "involving the removal of individuals appointed to independent, multimember boards based on the[ir] unlawful removal from office by the President and the obviously disruptive effect that such removal has on the organization's functioning." *LeBlanc*, __ F. Supp. 3d at __, 2025 WL 1454010, at *30 (alteration in original) (internal quotation marks and citation omitted). Here too, the plaintiffs have been removed from "a presidentially appointed and congressionally confirmed position of high importance"; both they and the NCUA Board "have been deprived of the ability to carry out their congressional mandate." *Wilcox*, 775 F. Supp. 3d at 236. And those injuries "cannot be retroactively cured by monetary damages." *Id.*; *see also Grundmann*, 770 F. Supp. 3d at 188 ("A check in the mail does not address the gravamen of this lawsuit."). The plaintiffs have therefore demonstrated irreparable injury and inadequate remedies at law. *See, e.g.*, *Slaughter*, __ F. Supp. 3d at __, 2025 WL 1984396, at *18 ("In the wrongful-termination context, irreparable injury and the availability of remedies at law tend to collapse into one another.").

The balance of the equities and the public interest weigh in favor of injunctive relief as well. *See generally Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that these factors merge where the government is a party). The public has a substantial interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citation omitted). Congress restricted the circumstances under which NCUA Board members may be removed from office, and the President terminated the plaintiffs outside those circumstances. *See, e.g.*, *Harris*, 775 F. Supp. 3d

at 187 (noting the "substantial public interest in the for-cause removal protections Congress has given to certain members of independent agencies").

The government asserts that an injunction reinstating the plaintiffs "would raise grave separation-of-powers concerns and work a great and irreparable harm to the Executive." ECF No. 11-1 at 22. In the government's view, "the public interest is better served by an NCUA Board member who holds the President's confidence and, accordingly, will more effectively serve him in executing his duties as Chief Executive." *Id.* These arguments simply presume that the government is correct on the merits and that the President can remove NCUA Board members at will. As explained above, that is not correct. The plaintiffs are entitled to permanent injunctive relief.[12]

## III.   Conclusion

For these reasons, the plaintiffs' motion for summary judgment is granted, and the government's cross motion for summary judgment is denied. The plaintiffs' motion for preliminary injunction and motion for expedition are denied as moot.

The Court declares the terminations of Plaintiffs Todd M. Harper and Tanya F. Otsuka unlawful. Harper and Otsuka remain members of the NCUA Board and may be removed by the President prior to the expiration of their terms only for cause.

The Court further orders that Defendants Scott Bessent, Larry Fazio, Kyle S. Hauptman, and Trent Morse, as well as their subordinates, agents, and employees, are enjoined, during Harper's and Otsuka's terms as members of the NCUA Board, from removing Harper and Otsuka

---

[12]   The plaintiffs' proposed order appears to seek relief that would enjoin the relevant defendants from removing Harper and Otsuka—or treating them as having been removed—without limitation. ECF No. 3-7. The Court will narrow this language to reflect that Harper and Otsuka may be removed for cause.

from their offices without cause or in any way treating Harper and Otsuka as having been removed from office, from impeding in any way their ability to fulfill their duties as members of the NCUA Board, and from denying or obstructing their authority or access to any benefits or resources of their offices. Those defendants and their subordinates, agents, and employees shall provide Harper and Otsuka with access to the necessary government facilities and equipment so that they may carry out their duties during their terms as members of the NCUA Board.

A separate order accompanies this memorandum opinion.


_____

AMIR H. ALI
United States District Judge


Date:   July 22, 2025

27