[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 25-5268**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

TODD M. HARPER,
in his personal capacity and in his official capacity as a Member of the
National Credit Union Administration Board, *et al.*,

Plaintiffs-Appellees,

v.

SCOTT BESSENT, in his official capacity
as Secretary of the Treasury, *et al.*,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Columbia

---

**OPENING BRIEF FOR APPELLANTS**

---

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
LAURA E. MYRON
  *Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

Plaintiffs are Todd M. Harper and Tanya F. Otsuka, in their personal capacities and in their official capacities as Members of the National Credit Union Administration Board. Defendants are Scott Bessent, in his official capacity as Secretary of the Treasury; Larry Fazio, in his official capacity as Executive Director of the National Credit Union Administration; Kyle S. Hauptman, in his official capacity as Chairman of the National Credit Union Administration Board; Trent Morse, in his official capacity as Deputy Assistant to the President and Deputy Director of the White House Office of Presidential Personnel; and Donald J. Trump, in his official capacity as President of the United States.

Jeffrey Moats filed an amicus brief in district court. There have been no intervenors.

### B.    Ruling Under Review

The ruling under review is a summary judgment order (Dkt. 29) and opinion (Dkt. 28) that the district court (Judge Amir Ali) issued on July 22, 2025, reinstating plaintiffs to their position as members of the National Credit Union Administration Board. The district court opinion can be found at 2025 WL 2049207.

## C.    Related Cases

This case has not previously been before this Court.

*Wilcox v. Trump*, No. 25-5057 (D.C. Cir.), involves a challenge to the President's removal of a principal officer from a multimember agency (the National Labor Relations Board) with statutory removal restrictions, 29 U.S.C. § 153(a).

*Harris v. Bessent*, No. 25-5055 (D.C. Cir.), involves a challenge to the President's removal of a principal officer from a multimember agency (the Merit Systems Protection Board) with statutory removal restrictions, 5 U.S.C. § 1202(d).

*Grundmann v. Trump*, No. 25-5165 (D.C. Cir.), involves a challenge to the President's removal of a principal officer from a multimember agency (the Federal Labor Relations Authority) with statutory removal restrictions, 5 U.S.C. § 7104(b).

*LeBlanc v. U.S. Privacy and Civil Liberties Oversight Board*, No. 25-5197 (D.C. Cir.), involves a challenge to the President's removal of principal officers from a multimember agency (the Privacy and Civil Liberties Oversight Board) without statutory removal restrictions.

*Slaughter v. Trump*, No. 25-5261 (D.C. Cir.), involves a challenge to the President's removal of principal officers from a multimember agency

(the Federal Trade Commission) with statutory removal restrictions, 15 U.S.C. § 41.

*Boyle v. Trump*, No. 25-1687 (4th Cir.), involves a challenge to the President's removal of principal officers from a multimember agency (the Consumer Product Safety Commission) with statutory removal restrictions, 15 U.S.C. § 2053(a).

/s/Laura E. Myron

Laura E. Myron
  *Attorney, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## TABLE OF CONTENTS

**Page**

GLOSSARY

STATEMENT OF JURISDICTION ................................................................1

INTRODUCTION AND STATEMENT OF THE ISSUES...............................1

STATEMENT OF THE CASE ....................................................... 3

I.    Statutory Background ........................................................... 3

II.   Factual Background and This Litigation ............................... 5

SUMMARY OF ARGUMENT ........................................................ 7

STANDARD OF REVIEW ............................................................. 8

ARGUMENT ............................................................................... 8

I.    Congress Has Not Limited The President's Power To Remove
      NCUA Board Members At Will ............................................. 8

II.   Any Implied Removal Restriction Would Run Afoul Of The
      President's Constitutional Authority To Remove NCUA Board
      Members At Will ...............................................................15

      A.    The President's Presumptive Power Of Removal and Its
            Limited Exceptions..................................................15

      B.    NCUA Board Members Exercise Substantial Executive
            Power and Thus Are Removable At Will................................. 23

III.  The District Court Erred In Ordering The Reinstatement Of
      Principal Officers The President Had Already Removed.................. 26

CONCLUSION ......................................................................... 35

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                          **Page(s)**

*American Bankers Association v. National Credit Union Administration*,
    934 F.3d 649 (D.C. Cir. 2019) ..................................................................... 8

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*,
    64 F.4th 1354 (D.C. Cir. 2023) ...................................................... 31-32, 32

*Baker v. Carr*,
    369 U.S. 186 (1962) ......................................................................... 28, 29

*Barnes v. Kline*,
    759 F.2d 21 (D.C. Cir. 1984), *judgment vacated sub nom.*
    *Burke v. Barnes*, 479 U.S. 361 (1987) ......................................................... 33

*Bessent v. Dellinger*,
    145 S. Ct. 515 (2025) ........................................................................ 29

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) ........................................................................ 21

*Buchanan v. Barr*,
    71 F.4th 1003 (D.C. Cir. 2023) ............................................................. 22

*Buckley v. Valeo*,
    424 U.S. 1 (1976) .......................................................................... 25

*Carlson v. Green*,
    446 U.S. 14 (1980) ......................................................................... 22

*CFPB v. Seila Law LLC*,
    923 F.3d 680 (9th Cir. 2019) ............................................................... 20

*City of Arlington v. FCC*,
    569 U.S. 290 (D.C. Cir. 2013) .............................................................. 13

*Collins v. Yellen*,
    594 U.S. 220 (2021) ................................................ 12, 22, 23, 24, 25, 34

*Davis v. Passman*,
    442 U.S. 228 (1979) ....................................................................... 21

*Dellinger v. Bessent*,
    2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ............................................. 27

*eBay Inc. v. MercExchange, LLC,*
   547 U.S. 388 (2006) ...................................................................... 8, 31, 32

*Egbert v. Boule,*
   596 U.S. 482 (2022) ................................................................. 22

*Exela Enterprise Solutions, Inc. v. NLRB,*
   32 F.4th 436 (5th Cir. 2022) ................................................... 15

*Federal Baseball Club of Baltimore v. National League of Professional
   Baseball Clubs,*
   259 U.S. 200 (1922) ................................................................ 21

*Flast v. Cohen,*
   392 U.S. 83 (1968) ............................................................. 20-21

*Free Enterprise Fund v. Public Company Accountability Oversight Board,*
   561 U.S. 477 (2010) ............................................................. 15, 25

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
   527 U.S. 308 (1999) ................................................................ 28

*Haviland v. Butz,*
   543 F.2d 169 (D.C. Cir. 1976) ................................................ 21

*Hein v. Freedom From Religion Foundation, Inc.,*
   551 U.S. 587 (2007) ................................................................ 21

*Hennen, Ex parte,*
   38 U.S. (13 Pet.) 230 (1839) ................................................ 9, 11

*Humphrey's Executor v. United States,*
   295 U.S. 602 (1935) .......................................... 1-2, 6, 7, 13, 17, 18, 19, 28

*Kalaris v. Donovan,*
   697 F.2d 376 (D.C. Cir. 1983) ........................................... 10, 13

*Kennedy v. Braidwood Management, Inc.,*
   145 S. Ct. 2427 (2025) ..................................... 1, 7, 9, 10, 11, 12

*Mississippi v. Johnson,*
   71 U.S. (4 Wall.) 475 (1867) ................................................. 27

*Morrison v. Olson,*
   487 U.S. 654 (1988) .......................................................... 16, 19

*Myers v. United States*,
    272 U.S. 52 (1926) ................................................................ 9, 28

*Nasrallah v. Barr*,
    590 U.S. 573 (2020) ........................................................... 14, 15

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................ 6, 32

*Sawyer, In re*,
    124 U.S. 200 (1888) ..................................................... 28, 29, 30

*Schindler Elevator Corp. v. Washington Metropolitan Area Transit Authority*,
    16 F.4th 294 (D.C. Cir. 2021) ............................................ 30-31

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ........................... 2, 7, 14, 15, 16, 17, 18, 19, 20, 22, 23

*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023) .............................. 10-11, 13, 14, 20, 30, 31

*Shurtleff v. United States*,
    189 U.S. 311 (1903) ............................................................... 7, 9

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ..................................... 27, 30, 31

*Slaughter v. Trump*
    2025 WL 2551247 (D.C. Cir. Sep. 2, 2025) ............................. 28

*Trump v. Boyle*,
    145 S. Ct. 2653 (2025) ............................................................ 33

*Trump v. United States*,
    603 U.S. 593 (2024) ........................................................ 16, 27

*Trump v. Wilcox*,
    145 S. Ct. 1415 (2025) ...................................................... 26, 32

*United States v. Perkins*,
    116 U.S. 483 (1886) ............................................................... 16

*Walton v. House of Representatives*,
    265 U.S. 487 (1924) ............................................................... 29

*White v. Berry,*
  171 U.S. 366 (1898) ................................................................. 29

*Wiener v. United States,*
  357 U.S. 349 (1958) ........................................................... 13, 28

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952) ................................................................. 18

## U.S. Constitution:

Art. II, § 1, cl. 1 ....................................................................... 15

Art. II, § 2, cl. 2 .................................................................... 8, 16

Art. II, § 3 ......................................................................... 15, 34

## Statutes:

Federal Credit Union Act:
  12 U.S.C. § 1752a .................................................................... 12
  12 U.S.C. § 1752a(a) ............................................................... 13
  12 U.S.C. § 1752a(a)-(b) ........................................................... 3
  12 U.S.C. § 1752a(b)-(c) ........................................................... 3
  12 U.S.C. § 1752a(b)(1) ..................................................... 3, 11, 16
  12 U.S.C. § 1752a(b)(2) ........................................................... 11
  12 U.S.C. § 1752a(b)(2)(B) ....................................................... 11
  12 U.S.C. § 1752a(c) ............................................................... 11
  12 U.S.C. § 1766(a) ................................................................. 3
  12 U.S.C. § 1766(b)(1) ............................................................. 4
  12 U.S.C. § 1786 .................................................................... 24
  12 U.S.C. § 1786(b) ................................................................. 4
  12 U.S.C. § 1786(e) ................................................................. 4
  12 U.S.C. § 1786(e)(3) ............................................................. 4
  12 U.S.C. § 1786(g) ................................................................. 4
  12 U.S.C. § 1786(h) .............................................................. 5, 25
  12 U.S.C. § 1786(k)(1) ........................................................... 4, 24
  12 U.S.C. § 1786(k)(2) ............................................................. 4
  12 U.S.C. § 1786(k)(2)(A)-(D) ..................................................... 4
  12 U.S.C. § 1786(p) ................................................................. 3
  12 U.S.C. § 1787(a) ................................................................. 25

5 U.S.C. § 1202(d) ................................................................. 10

5 U.S.C. § 1211(b) ................................................................. 10

5 U.S.C. § 7104(b) ................................................................. 10

5 U.S.C. § 7521(a) ................................................................. 10

7 U.S.C. § 6992(b)(2) ............................................................ 10

10 U.S.C. § 942(c) ................................................................. 10

10 U.S.C. § 8083(c) ............................................................... 10

12 U.S.C. § 242 .................................................................... 10

12 U.S.C. § 4512(b)(2) .......................................................... 10

12 U.S.C. § 5491(c)(3) .......................................................... 10

14 U.S.C. § 309(c)(1) ............................................................ 10

15 U.S.C. § 41 ................................................................. 10, 13

15 U.S.C. § 2053(a) ............................................................... 10

26 U.S.C. § 7443(f) ............................................................... 10

28 U.S.C. § 152(e) ................................................................ 10

28 U.S.C. § 176 .................................................................... 10

28 U.S.C. § 596(a)(1) ............................................................ 10

28 U.S.C. § 631(i) ................................................................. 10

28 U.S.C. § 991(a) ................................................................ 10

28 U.S.C. § 1291 ..................................................................... 1

28 U.S.C. § 1331 ..................................................................... 1

28 U.S.C. § 1361 ..................................................................... 1

29 U.S.C. § 153(a) ................................................................ 10

29 U.S.C. § 661(b) ........................................................................ 10

30 U.S.C. § 823(b)(1) .................................................................... 10

38 U.S.C. § 7101(b)(2) .................................................................. 10

38 U.S.C. § 7253(f) ....................................................................... 10

39 U.S.C. § 202(e)(3) .................................................................... 10

39 U.S.C. § 502(a) ........................................................................ 10

41 U.S.C. § 7105 (b)(3) ................................................................ 10

42 U.S.C. § 902(a)(3) .................................................................... 10

42 U.S.C. § 1975(e) ...................................................................... 10

42 U.S.C. § 5841(e) ...................................................................... 10

42 U.S.C. § 7171(b)(1) .................................................................. 10

42 U.S.C. § 7412(r)(6)(B) .............................................................. 10

45 U.S.C. § 154 ............................................................................. 10

46 U.S.C. § 46101(b)(5) ............................................................... 10

49 U.S.C. § 1111(c) ...................................................................... 10

49 U.S.C. § 1301(b)(3) ................................................................. 10

## Regulations:

12 C.F.R. § 701.21(c) .................................................................... 24

12 C.F.R. § 701.31 ........................................................................ 24

12 C.F.R. §§ 702.304-702.306 ..................................................... 24

12 C.F.R. § 722.3 .......................................................................... 24

12 C.F.R. §§ 750.0-750.7 .............................................................. 24

**Legislative Material:**

S. Rep. No. 94-751, at 4 (1976) .......................................................................12

**Other Authorities:**

NCUA, *2025 Annual Performance Plan* 6 (Jan. 2025),
    https://perma.cc/S4K6-X38L.................................................................... 3

NCUA, *Legal Recoveries from the Corporate Crisis*,
    https://perma.cc/JDN7-PDHX............................................................ 5, 25

*The Federalist* No. 70 (Alexander Hamilton)
    (Jacob E. Cooke ed. 1961) ...................................................................... 25

*Power of the President to Remove Members of the Tennessee Valley
    Authority from Office*,
    39 Op. Att'y Gen. 145 (1938) .................................................................. 18

## GLOSSARY

| | |
|---|---|
| FTC | Federal Trade Commission |
| JA | Joint Appendix |
| NCUA | National Credit Union Administration |

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1361. JA3, ¶ 12. The court granted plaintiffs summary judgment on July 22, 2025, JA104-05, and defendants filed a notice of appeal the same day, JA106. This Court has jurisdiction. 28 U.S.C. § 1291.

## INTRODUCTION AND STATEMENT OF THE ISSUES

This appeal arises from an order of the district court reinstating two members of the National Credit Union Administration (NCUA) Board whom the President removed. Here, the President exercised his Article II authority to remove two principal officers—plaintiffs Todd Harper and Tanya Otsuka —from their positions as NCUA Board Members. There is no statutory restriction on the President's authority to remove these principal officers, and so they are removable at will. *Kennedy v. Braidwood Management, Inc.*, 145 S. Ct. 2427, 2448-49 (2025).

Notwithstanding the obvious absence of a removal restriction, the district court inferred from statutory silence a requirement that NCUA Board Members could be removed "only for cause," JA102, based on the "history of the NCUA statute" and the "structure and function of the NCUA Board," JA90. The court then further held that such inferred removal restrictions were constitutional under *Humphrey's Executor v. United*

*States*, 295 U.S. 602 (1935). The court acknowledged that *Humphrey's Executor* applies only to "multimember expert agencies that do not wield substantial executive power," JA91 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020)), and it recognized that the NCUA "investigates and prosecutes violations of the Federal Credit Union Act and related regulations," "prescribes rules and regulations" that affect "broad swaths of the American economy," and "can issue daunting monetary penalties." JA92-93 (quotation marks omitted). The court concluded that these executive powers do not "warrant a departure from *Humphrey's Executor*," JA93, and issued a declaratory judgment and injunction reinstating plaintiffs to their offices, JA104-05. Under the court's order, plaintiffs "remain members of" the NCUA "Board and may be removed by the President prior to the expiration of their terms only for cause." JA104.

The issues presented are:

1. Whether Congress has enacted any statutory restrictions on the President's ability to remove Members of the NCUA Board.

2. Whether the President has authority under Article II of the Constitution to remove a NCUA Board Member without first having to establish cause.

2

3. Whether the district court exceeded its remedial authority in ordering the reinstatement of principal officers the President determined should no longer be entrusted with executive power.

**STATEMENT OF THE CASE**

## I.  Statutory Background

The National Credit Union Administration is an agency "in the executive branch," headed by a three-member Board. 12 U.S.C. § 1752a(a)-(b). Board Members are appointed by the President with the advice and consent of the Senate and serve six-year terms. *Id.* § 1752a(b)-(c). "Not more than two members" may be from the same political party. *Id.* § 1752a(b)(1). "[I]t is undisputed that the NCUA statute does not contain a provision that expressly limits the President's ability to remove the agency's Board members." JA82.

The NCUA exercises substantial authority to enforce the Federal Credit Union Act and "is responsible for the regulation and supervision of 4,499 federally insured credit unions with $2.3 trillion in assets." NCUA, *2025 Annual Performance Plan* 6 (Jan. 2025), https://perma.cc/S4K6-X38L. The NCUA Board may promulgate rules and regulations, 12 U.S.C. § 1766(a); and can investigate unsafe or unsound practices and alleged violations of applicable laws, *id.* § 1786(p). If the Board believes a violation occurred, it may institute an enforcement proceeding and hold an

3

administrative hearing. *Id.* § 1786(b), (e). If there has been a violation, the Board may order the party to cease-and-desist, pay restitution or reimbursement, and "take such other action as the Board determines to be appropriate." *Id.* § 1786(e)(3). The Board may also remove offending parties from office and prohibit them from participating "in any manner" in "the affairs of any insured credit union," or "any insured depository institution." *Id.* § 1786(g).

The Board may impose substantial money penalties for violations it adjudicates. 12 U.S.C. § 1786(k)(2). Violations of "any law or regulation" can result in penalties of $5,000 per day; recklessly engaging in unsafe or unsound practices can be penalized up to $25,000 per day; and knowing violations that cause a substantial loss to a credit union can be penalized up to $1 million per day. *Id.* § 1786(k)(2)(A)-(D). The Board can sue in federal court to enforce any of its orders. *Id.* § 1786(k)(1).

As part of its oversight duties, the Board can suspend or revoke the charter of any federal credit union or place it in involuntary liquidation if the credit union is insolvent or has "violated any of the provisions of its charter, its bylaws," the Federal Credit Union Act, "or any regulations issued thereunder." 12 U.S.C. § 1766(b)(1). The Board may also appoint itself as conservator of any insured credit union in various circumstances.

*Id.* § 1786(h). The NCUA readily used that statutory authority in the wake of the 2008 financial crisis to act as the liquidating agent for five failed credit unions—in that role, the NCUA filed dozens of lawsuits that recovered over $5 billion. NCUA, *Legal Recoveries from the Corporate Crisis*, https://perma.cc/JDN7-PDHX.

## II.    Factual Background and This Litigation

President Trump nominated plaintiff Todd Harper to serve as an NCUA Board Member, and he was confirmed in 2019. JA5, ¶ 19. President Biden nominated Harper for another term, and he was confirmed in 2022. JA5-6, ¶ 20. Harper's current term was originally set to end in 2027. *Id.*

President Biden nominated Tanya Otsuka to serve as an NCUA Board Member, and she was confirmed in 2023. JA6, ¶ 21. Otsuka's term was originally set to end in 2029. *Id.*

President Trump removed plaintiffs from their offices in April 2025. JA6, ¶¶ 22-23. Plaintiffs sued to contest their removal, "seek[ing] a declaration that their terminations were unlawful and an injunction reinstating them as Board members." JA80-81.

The district court granted plaintiffs summary judgment, declaring that they "may be removed by the President prior to the expiration of their terms only for cause." JA104. The court noted that there is no express

5

statutory restriction on the President's ability to remove NCUA Board Members. JA82. But the court nevertheless inferred a for-cause removal restriction based on legislative history and context. JA82-89. The court went on to conclude that these atextual removal restrictions were constitutional because the NCUA "does not exercise the kind of substantial executive power that would warrant a departure from" *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). JA93.

The district court then declared that the President's removal of plaintiffs was "unlawful" and that plaintiffs "may be removed by the President prior to the expiration of their terms" in 2027 and 2029 "only for cause." JA104. The court further enjoined the defendants, other than the President, "as well as their subordinates, agents, and employees * * * from removing Harper and Otsuka from their offices without cause or in any way treating Harper and Otsuka as having been removed from office," and "from impeding in any way their ability to fulfill their duties as members of the NCUA Board." JA104.

This Court stayed the district court's order pending appeal, explaining that the government had "satisfied the stringent requirements for a stay." Order 1 (Aug. 21, 2025) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

## SUMMARY OF ARGUMENT

**I.** Congress must use "very clear and explicit language" if it attempts to "take away" the President's power to remove executive officers whom he has appointed. *Shurtleff v. United States*, 189 U.S. 311, 315 (1903). Where Congress has not done so, the courts will not "read a for-cause removal restriction into a statute that does not explicitly provide for one." *Kennedy v. Braidwood Management, Inc.*, 145 S. Ct. 2427, 2448 (2025). Because Congress has not enacted any statutory restrictions on the President's authority to remove NCUA Board Members, they are removable at will.

**II.** The Constitution vests the President with the general authority to remove principal executive officers at will. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213-14 (2020). The Supreme Court has recognized two narrow exceptions to the President's removal power—one exception for certain inferior officers (not at issue here), *id.* at 217, and another for multimember agencies that exercise "no part of the executive power" and "do not wield substantial executive power," *id.* at 215, 218. Because the NCUA wields substantial executive power, it does not fit within the narrow exception established by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and NCUA Board Members must be removable at will.

7

**III.** Separately, the district court erred by ordering that plaintiffs must be fully reinstated as principal executive officers heading an agency. The court's order amounts to *de jure* reinstatement beyond the equitable authority of the court. A court may not enjoin the President in performance of his official duties, including the appointment and removal of principal officers. Accordingly, when principal officers have challenged their removal from office, they have historically sought legal remedies like backpay, not reinstatement. Finally, equitable considerations favor the government such that the entry of a permanent injunction was an abuse of discretion.

## STANDARD OF REVIEW

The Court reviews the grant of summary judgment de novo. *American Bankers Association v. National Credit Union Administration*, 934 F.3d 649, 662 (D.C. Cir. 2019). The grant of permanent injunctive relief is reviewed for abuse of discretion. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

## ARGUMENT

## I.    Congress Has Not Limited The President's Power To Remove NCUA Board Members At Will

**A.** The Constitution provides that principal officers, like the NCUA Board Members, are appointed by the President with the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2. Absent a constitutional

8

or statutory provision to the contrary, the "power of removal [is] incident to the power of appointment." *Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839). Thus for principal officers, the general rule is that "the power of removal [is] vested in the President alone." *Id.* To perform his constitutional duties, the President "must" possess the "power of removing those" executive officers "for whom he cannot continue to be responsible." *Myers v. United States*, 272 U.S. 52, 117 (1926). Thus, "in the absence of any express limitation respecting removals," the President may remove principal executive officers at will. *Id.*

The key is that a statutory removal restriction must be "express." *Myers*, 272 U.S. at 117. Congress must use "very clear and explicit language" if it attempts to "take away this power of removal" from the President. *Shurtleff v. United States*, 189 U.S. 311, 315 (1903) (upholding the President's removal without cause). "'[M]ere inference or implication' does not suffice" to "read a for-cause removal restriction into a statute that does not explicitly provide for one." *Kennedy v. Braidwood Management, Inc.*, 145 S. Ct. 2427, 2448 (2025) (alteration in original) (quoting *Shurtleff*, 189 U.S. at 315).

The Supreme Court has required express statutory language to impose a removal restriction because Congress "knows how to do so."

9

*Braidwood*, 145 S. Ct. at 2448 (collecting examples). Congress has enacted dozens of statutes stating that officers may be removed "for inefficiency, neglect of duty, or malfeasance in office,"[1] or for "neglect of duty or malfeasance in office,"[2] or for "good cause,"[3] or "for cause."[4] Given Congress' extensive history enacting such legislation, the Supreme Court and this Court have declined to infer removal restrictions where Congress has not chosen to enact them. *Braidwood*, 145 S. Ct. at 2449 ("Congress must speak clearly if it wishes to insulate officers from at-will removal" and "[i]t has not done so here."); *Kalaris v. Donovan*, 697 F.2d 376, 401 (D.C. Cir. 1983) ("The long-standing rule relating to the removal power is that, in the face of congressional silence, the power of removal is incident to the power of appointment."); *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir.

---

[1] 5 U.S.C. §§ 1202(d), 1211(b), 7104(b); 12 U.S.C. § 5491(c)(3); 15 U.S.C. § 41; 26 U.S.C. § 7443(f); 29 U.S.C. § 661(b); 30 U.S.C. § 823(b)(1); 38 U.S.C. § 7101(b)(2); 42 U.S.C. §§ 5841(e), 7171(b)(1), 7412(r)(6)(B); 45 U.S.C. § 154; 46 U.S.C. § 46101(b)(5); 49 U.S.C. §§ 1111(c), 1301(b)(3); *see also* 28 U.S.C. § 176 ("incompetency, misconduct, [or] neglect of duty"); *id.* § 631(i) (same); *id.* § 152(e) (similar).

[2] 15 U.S.C. § 2053(a); 29 U.S.C. § 153(a); 42 U.S.C. §§ 902(a)(3), 1975(e); *see also* 10 U.S.C. § 942(c) ("misconduct" or "neglect of duty"); 38 U.S.C. § 7253(f) (same).

[3] 5 U.S.C. § 7521(a); 28 U.S.C. §§ 596(a)(1), 991(a); 41 U.S.C. § 7105(b)(3).

[4] 7 U.S.C. § 6992(b)(2); 10 U.S.C. §§ 8083(c); 12 U.S.C. §§ 242, 4512(b)(2); 14 U.S.C. § 309(c)(1); 39 U.S.C. §§ 202(e)(3), 502(a).

2023) ("Nothing in the text of the statute creating the Council clearly expresses a congressional intent to trim the President's removal power.").

The NCUA's statute establishes the Board with three members, appointed by the President with Senate confirmation. 12 U.S.C. § 1752a(b)(1). Board members serve six-year terms, and "may continue to serve" after their term ends "until a successor has qualified." *Id.* § 1752a(c). Congress established various requirements for who may serve on the Board, *id.* § 1752a(b)(2)(B), and what qualifications the President should consider in prospective Board Members, *id.* § 1752a(b)(2). But Congress did not enact any statutory restrictions on the President's removal authority. Accordingly, the general rule applies, and the Board Members may be removed at will.

**B.** The district court strayed from this straightforward analysis, and instead scoured legislative history, alternative proposals, and inapposite precedents to infer what it believed Congress would have wanted. JA83-90. That was error. Where "no statute restricts removal," "'there can be no doubt' that the" appointing authority—here, the President—may remove NCUA Board Members "at will." *Braidwood*, 145 S. Ct. at 2444 (quoting *Ex parte Hennen*, 38 U.S. (13 Pet.) at 259).

11

The district court's analysis is flawed even on its own terms. The court found it significant that Congress chose not to enact language that NCUA Board Members are removable at will. JA83. But this misunderstands how the background rule works. "When Congress wants to depart from the default of at-will removability and instead furnish for-cause protection," it must use "very clear and explicit language," not simply decline to codify the default rule. *Braidwood*, 145 S. Ct. at 2448 (quotation marks omitted).

The district court also pointed to a Senate report describing the NCUA as "an independent agency" to support inferred removal restrictions. JA83 (quoting S. Rep. No. 94-751, at 4 (1976)). But as the Supreme Court has explained, "Congress has described many agencies as 'independent' without imposing any restriction on the President's power to remove the agency's leadership." *Collins v. Yellen*, 594 U.S. 220, 249 (2021) (holding statutory removal restrictions for the Federal Housing Finance Authority Director unconstitutional). And *Collins* specifically pointed to the NCUA as an example of an agency without removal restrictions. *Id.* (citing 12 U.S.C. § 1752a).

The district court also compared the NCUA's structure as an agency to other agencies that *do* have statutory removal restrictions as evidence that the NCUA Board should have similar removal restrictions. JA84-89.

12

That ignores, of course, Congress' choice to vest bodies like the Federal Trade Commission in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), with removal restrictions, 15 U.S.C. § 41, while declining to grant any to the NCUA Board.

In a single case involving the War Claims Commission—a temporary agency empowered only to adjudicate the dispensation of government benefits—the Supreme Court inferred removal restrictions. *Wiener v. United States*, 357 U.S. 349, 356 (1958). But *Wiener*'s holding was based on the Court's conclusion that the War Claims Commission was "placed *outside* the Executive Branch, as [a] separate, independent tribunal[]." *Kalaris*, 697 F.2d at 395. That reasoning does not apply to the NCUA, which "is structurally housed squarely within the Executive Branch," *Severino*, 71 F.4th at 1048; *see* 12 U.S.C. § 1752a(a) (establishing the NCUA "in the executive branch of the Government"). Moreover, the NCUA performs "core executive function[s]," *Severino*, 71 F.4th at 1048, such as promulgating rules, initiating enforcement actions, and imposing penalties and remedies. "[U]nder our constitutional structure," the NCUA's exercise of these powers "*must be* exercises of [] the executive power." *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (quotation marks omitted).

The district court held that the NCUA must have "absolute freedom from Executive interference" because it is "charged with regulating financial institutions." JA88-89 (quotation marks omitted). Of course, the Secretary of Treasury and the Comptroller of the Currency are both removable at will and both are charged with significant responsibilities overseeing financial institutions. The mere fact that Congress found it necessary to regulate portions of the economy does not mean that executive officers entrusted with that responsibility must be—without more—insulated from the President's control. *Cf. Seila Law LLC v. CFPB*, 591 U.S. 197, 225 (2020) (striking down express removal provisions for a principal officer who "enforce[d] policy for a vital segment of the economy affecting millions of Americans").

At bottom, there is no reason to create a removal restriction where Congress has not clearly imposed one. "Courts will not assume Congress legislated a potential separation of powers problem unless the statutory text makes Congress's intent to test constitutional lines apparent." *Severino*, 71 F.4th at 1044. There is no basis to make such an assumption here, where it "would be easy enough for Congress" to enact an express removal restriction. *Nasrallah v. Barr*, 590 U.S. 573, 583 (2020). "Congress has not

done so, and it is not the proper role of the courts to rewrite the laws passed by Congress and signed by the President." *Id.*

## II. Any Implied Removal Restriction Would Run Afoul Of The President's Constitutional Authority To Remove NCUA Board Members At Will

### A. The President's Presumptive Power Of Removal and Its Limited Exceptions

**1.** Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). The President and Vice-President are the only elected officials within the entire Executive Branch, and responsibility to the electorate requires that those wielding the President's executive authority must remain accountable to the President. *Id.* at 224. Accordingly, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enterprise Fund v. Public Company Accountability Oversight Board*, 561 U.S. 477, 513-14 (2010). It is thus well established that the President's removal power "is essential to the performance of his Article II responsibilities," *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022), and Congress cannot control the President's "conclusive and preclusive" removal authority "with

respect to 'executive officers of the United States whom he has appointed,'"
*Trump v. United States*, 603 U.S. 593, 608-09 (2024).

The Supreme Court has "recognized only two exceptions to the
President's unrestricted removal power." *Seila Law*, 591 U.S. at 204. First,
the Court has held that "Congress could provide tenure protections to
certain *inferior* officers with narrowly defined duties." *Id.*[5] Second,
*Humphrey's Executor* held that Congress could "give for-cause removal
protections to a multimember body of experts, balanced along partisan
lines, that performed legislative and judicial functions and was said not to
exercise any executive power." *Seila Law*, 591 U.S. at 216. Those exceptions
represent the "outermost constitutional limits of permissible restrictions on
the President's removal power" under current precedent. *Id.* at 218.

NCUA Board Members are principal rather than inferior officers: they
are appointed by the President with Senate confirmation, *see* U.S. Const.
art. II, § 2, cl. 2; 12 U.S.C. § 1752a(b)(1), oversee their own department, and
are not subservient to any other principal officer. Thus, the relevant
question is whether the NCUA can be said to perform only "legislative and

---

[5] *See, e.g.*, *United States v. Perkins*, 116 U.S. 483 (1886); *Morrison v.
Olson*, 487 U.S. 654 (1988).

16

judicial functions" and therefore falls within the exception identified in *Humphrey's Executor*. *Seila Law*, 591 U.S. at 216. It does not.

In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of Federal Trade Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 623. Despite reaffirming the then-recent holding in *Myers* that the President has "unrestrictable power * * * to remove purely executive officers," the Court concluded that *Myers* did not control because the FTC Commissioner at issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President." *Humphrey's Executor*, 295 U.S. at 628, 632. Instead, the *Humphrey's Executor* Court understood the FTC to be a "body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or as a judicial aid." *Id.* at 628. Those duties, according to the Court, "c[ould] not in any proper sense be characterized as an arm or an eye of the executive." *Id.* The Court understood the FTC not to be exercising executive power at all but rather to "ac[t] in part quasi legislatively and in part quasi judicially." *Id.* On that understanding, *Humphrey's Executor* upheld the provision restricting the removal of FTC Commissioners.

17

Soon after *Humphrey's Executor* was decided, its reach across the Executive Branch was understood to be limited. In 1938, Attorney General Robert Jackson explained that *Humphrey's Executor* did not apply to the Tennessee Valley Authority, which "does not exercise quasi-legislative or quasi-judicial functions," and thus the President enjoyed his "ordinary power to remove executive officers appointed by him." *Power of the President to Remove Members of the Tennessee Valley Authority from Office*, 39 Op. Att'y Gen. 145, 146-47 (1938). Thus, whatever the bounds "of congressional control" for quasi-judicial, quasi-legislative agencies, the President's "exclusive power of removal in executive agencies * * * continued to be asserted and maintained." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 638 n.4 (1952) (Jackson, J., concurring). That limitation was reiterated by the Supreme Court in *Seila Law*, which explained that *Humphrey's Executor* is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power. 591 U.S. at 216-17 (quoting *Humphrey's Executor*, 295 U.S. at 632).

Moreover, the assumption underlying *Humphrey's Executor*—that the FTC's "quasi-legislative" and "quasi-judicial" powers were not actually executive power under the Constitution—has since been "repudiated" by

18

the Supreme Court. *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part and dissenting in part). In other words, *Humphrey's Executor*'s conclusion that the 1935 FTC "did not exercise executive power has not withstood the test of time," *Seila Law*, 591 U.S. at 216 n.2, and "it is hard to dispute that" the agency's powers "would at the present time be considered 'executive,' at least to some degree," *Morrison v. Olson*, 487 U.S. 654, 689 n.28, 691 (1988). Nothing in *Humphrey's Executor* establishes a categorical approval for removal restrictions for multimember agencies that exercise materially different and materially greater executive power than the 1935 FTC.

Indeed, *Seila Law* confirms that *Humprey's Executor*'s holding does not include "latent powers that the [1935 FTC] may have had" but which were "not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4. The Court instructed that *Humphrey's Executor* must be understood "on its own terms," *id.*, and that it approved removal restrictions for "an officer who occupies no place in the executive department and who exercises no part of the executive power," *Humphrey's Executor*, 295 U.S. at 628. Thus, while the *Seila Law* dissenters detailed the various and substantial executive powers that the 1935 FTC possessed, including investigations, enforcement actions, adjudications, rulemaking, and litigation authority,

19

*Seila Law*, 591 U.S. at 286 n.10 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part), the Court explained that "what matters" for judging the constitutionality of different agencies "is the set of powers the [*Humphrey's Executor*] Court considered as the basis for its decision," *id.* at 219 n.4 (majority opinion).

The district court here erred in adopting an overbroad reading *Humphrey's Executor*, JA91-94, stretching it beyond its facts to uphold removal protections for an agency that "possesses substantially more executive power than the FTC did back in 1935," *CFPB v. Seila Law LLC*, 923 F.3d 680, 683 (9th Cir. 2019) (upholding the CFPB's removal restrictions), *vacated and remanded*, 591 U.S. 197. *Humphrey's Executor* does not extend so far, and after *Seila Law*, "only a very narrow reading of" that case "is still good law," meaning there is little "left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino*, 71 F.4th at 1050 (D.C. Cir. 2023) (Walker, J., concurring).

Reading *Humphrey's Executor* as confined to the precise considerations then before the Court is consistent with how the Supreme Court and courts of appeals have applied binding precedent whose underlying foundations have since been eroded. For example, *Flast v.*

20

*Cohen*, 392 U.S. 83 (1968), held that taxpayers have standing to challenge statutes "authorizing the use of federal funds in a way that allegedly violates the Establishment Clause," *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 593 (2007) (plurality opinion). But the Supreme Court has refused to extend *Flast* to encompass other alleged violations of the Constitution or to executive expenditures not dictated by statute. *Id.* at 609-10 (collecting cases). Instead, *Flast* has a "narrow application" and "has largely been confined to its facts." *Id.* at 609.

The courts have likewise narrowly applied *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs*, 259 U.S. 200 (1922), which held that the sport of baseball was not subject to the antitrust laws, reasoning that baseball games were played and completed in a single state and thus were not interstate commerce even if teams continually travelled across state lines. *Id.* at 208-09. The Supreme Court has since rejected that understanding of interstate commerce, and it is "clear * * * the principle enunciated in *Federal Baseball* * * * is not to be extended to other businesses." *Haviland v. Butz*, 543 F.2d 169, 175 (D.C. Cir. 1976).

Similarly, the Supreme Court has held that under circumstances presented in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979);

and *Carlson v. Green*, 446 U.S. 14 (1980), courts may infer a damages cause of action directly under the Constitution. But the Court has stressed that, if there is "any reason to think that Congress might be better equipped to create a damages remedy," the courts may extend those cases no further. *Egbert v. Boule*, 596 U.S. 482, 492 (2022); *accord Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023).

**2.** The district court mistakenly read *Seila Law* as ratifying a rule more tolerant of removal protections for the heads of multimember agencies. But the NCUA exercises "substantial executive power," *Seila Law*, 591 U.S. at 218, and therefore falls outside the exception for multimember agencies recognized in *Seila Law*. Indeed, even this articulation of the test may be overly tolerant of restrictions on the President's removal authority. After *Seila Law*, the Supreme Court clarified that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." *Collins*, 594 U.S. at 253; *see also id.* at 273 (Kagan, J., concurring in part and concurring in the judgment) (stating that the *Collins* majority "extend[ed]" *Seila Law*'s holding and dropped the qualifier of "significant" executive power); *id.* at 293 (Sotomayor, J., concurring in part and dissenting in part)

22

(noting that the "words" "significant executive power" "appear nowhere in today's decision"). Under this articulation, any exercise of executive power subjects an agency head to the President's control.

Thus, in *Collins*, once the Court had determined that the Federal Housing Finance Authority exercised executive power, it presumptively fell within the President's control of at-will removal. "At-will removal ensures that" principal officers "will depend, as they ought, on the President, and the President on the community" and "[t]hese purposes are implicated whenever an agency does important work," which courts are not "well-suited" to weigh and compare. *Collins*, 594 U.S. at 252-53. Because the NCUA exercises substantial executive authority, under any articulation of the test, any inferred limitations on the President's ability to remove NCUA Board Members cannot be sustained.

### B.     NCUA Board Members Exercise Substantial Executive Power and Thus Are Removable At Will

The NCUA is not a "mere legislative or judicial aid," *Seila Law*, 591 U.S. at 218. It wields significant executive authority, including significant executive adjudication, the imposition of money penalties, enacting substantive rules that bind regulated credit unions, and barring individuals from managing or overseeing credit unions. Given its varied and substantial

23

executive powers, courts may not infer a removal restriction on the
President's constitutional authority to remove the NCUA Board Members.

The NCUA promulgates regulations that bind federally chartered and
federally insured credit unions across the country. Thus, the NCUA limits
the term, amount, and rates applicable to loans issued by credit unions, 12
C.F.R. § 701.21(c); sets requirements to prevent discrimination, *id.* § 701.31;
mandates annual capital planning for credit union and annual stress
testing, *id.* §§ 702.304-702.306; provides for appraisal requirements in
various real-estate transactions, *id.* § 722.3; and generally prohibits "golden
parachute[s]" for credit union executives, *id.* §§ 750.0-750.7. The NCUA's
authority to "issue a 'regulation or order'" is a "clear[] exercise[]" of
"executive power." *Collins*, 594 U.S. at 254.

The NCUA brings enforcement actions for violations of the Federal
Credit Union Act and can issue coercive orders for such violations,
requiring the respondent to cease-and-desist, to pay restitution or money
penalties, or to remove officers from the credit union. 12 U.S.C. § 1786. The
NCUA can enforce those orders in district court. *Id.* § 1786(k)(1). "A lawsuit
is the ultimate remedy for a breach of the law," and the NCUA's
"enforcement power, exemplified by its discretionary power to seek judicial

24

relief," is necessarily executive. *Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (per curiam).

Moreover, the NCUA can appoint itself as a conservator of credit unions and may liquidate the credit union's assets in various circumstances. 12 U.S.C. §§ 1786(h), 1787(a). *Collins* recognized that agency's power to put a "company into conservatorship and simultaneously appoint itself as conservator" confirms the agency's exercise of "executive power." 594 U.S. at 254. That is confirmed here, where the NCUA's role as conservator of corporate credit unions led to its spearheading of litigation that resulted in billions of dollars in recovery. *See* NCUA, *Legal Recoveries from the Corporate Crisis*, *supra* p.5. When executive officers initiate and oversee such significant actions, the President must be able to ensure that the officers maintain his trust and further his policies. "Without a clear and effective chain of command, the public cannot 'determine on whom the blame or the punishment of a pernicious measure, or series of pernicious measures ought really to fall.'" *Free Enterprise*, 561 U.S. at 498 (quoting *The Federalist* No. 70, at 476 (Alexander Hamilton) (Jacob E. Cooke ed. 1961)).

Fundamentally, the NCUA exercises executive power—indeed substantial executive power. Because the NCUA exercises executive power,

it does not fall within the narrow *Humphrey's Executor* exception, and NCUA Board Members must be removable at will by the President. The Supreme Court has recently recognized that the government is likely to show that the principal officers of the National Labor Relations Board and the Merit Systems Protection Board "exercise considerable executive power." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). The NCUA Members are at least as similarly situated to those officers. The district court's contrary conclusion was wrong and should be reversed.

## II.    The District Court Erred In Ordering The Reinstatement Of Principal Officers The President Had Already Removed

**A.** The district further court erred by declaring that plaintiffs "remain members of the" NCUA Board and "may be removed by the President * * * only for cause" before their terms end in 2027 and 2029. JA104. Under the court's order, then, plaintiffs will continue to serve as principle executive officers even though the President has determined that they ought not be entrusted with executive authority. For plaintiff Otsuka, the court's order means that she will remain in office throughout the President's term. JA6, ¶ 21 (Otsuka's term was originally set to expire in August 2029).

This *de jure* reinstatement is beyond the equitable authority of the court to impose because reinstatement impinges on the President's

"conclusive and preclusive" "power of removal in executive agencies," which "disabl[es] the Congress from acting upon the subject," and means that "the courts have 'no power to control [the President's] discretion.'" *Trump*, 603 U.S. at 607. There would be no doubt of "grave and irreparable" injury if the district court had ordered reinstatement of a dismissed Secretary of State, and any differences between the Department of State and the NCUA "g[o] to the extent—not the character—of the President's injury." *Dellinger v. Bessent*, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (per curiam). The grant of an impermissibly broad remedy is an independent basis for this Court to reverse the district court's order.

The Supreme Court recognized long ago that a court "has no jurisdiction * * * to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). The appointment and removal of principal officers is specifically entrusted to the President, *see Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996) (recognizing that "principal officers of the United States * * * must be appointed, and removed, by the President"), and thus a court may not, by injunction, order the reinstatement of a principal officer the President has removed. Accordingly, when principal officers have been removed from their posts, they generally have challenged that removal in suits for back

27

pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349-51 (same). That reflects the obvious Article II problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President. The President cannot be compelled to retain the services of a principal officer whom he has removed from office.

Thus, federal courts "have no equitable authority to order the reinstatement of an officer removed by the President." *Slaughter v. Trump*, 2025 WL 2551247, at *10 (D.C. Cir. Sep. 2, 2025) (Rao, J., dissenting). A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is * * * well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to

remove a public officer" or that "withheld federal equity from staying removal of a *federal* officer" reflect "a traditional limit upon equity jurisdiction"); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."); *accord Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting) (observing that "courts of equity at the time of the founding were apparently powerless" to stop the removal of executive officers). The district court's order cannot be squared with these precedents.

The equitable principles precluding reinstatement of a removed officer apply equally to subordinates. Nothing in *Baker* or *Sawyer* suggests that the longstanding principle that "traditional limit[s] upon equity jurisdiction" prohibit a court from "staying removal of a federal officer" do not apply as long as an injunction runs to a subordinate officer. *See Baker*, 369 U.S. at 231 (citing *In re Sawyer*, 124 U.S. 200; *Walton v. House of Representatives*, 265 U.S. 487 (1924); and *White*, 171 U.S. 366). Only the President has the authority to appoint, remove, and supervise a principal officer, so any relief ordered by the Court that prevents plaintiffs' removal necessarily targets the President. *Dellinger*, 145 S. Ct. at 516 (Gorsuch, J., dissenting) (explaining that a reinstatement order "effectively command[s]

29

the President * * * to recognize and work with someone whom the President sought to remove from office"). Regardless of whom the order formally applies to, and however styled, an order that has the effect of reinstating principal executive officers removed by the President violates both Article II and the limits on a court's equitable powers.

The district court's reliance on *Swan* and *Severino*, JA99, is also misplaced. In neither case did this Court review, much less sustain, an order like the ones presented here. Rather, the Court considered only whether the limits on the Court's equitable power against the President made the asserted injury non-redressable, thus undermining the court's jurisdiction. *See Severino*, 71 F.4th at 1042. At most those cases can be read to stand for the proposition that equitable relief might be available to require a subordinate officer to allow a plaintiff to exercise some of the privileges of the office such as by "including [him] in Board meetings" or "giving him access to his former office." *Swan*, 100 F.3d at 980; *see also Severino*, 71 F.4th at 1043. Those cases cannot be read to have rejected the separate longstanding principle that equitable power may not be used to "restrain by injunction the removal of a [public] officer," *In re Sawyer*, 124 U.S. at 212, a principle not briefed or addressed in either of those cases. *Cf. Schindler Elevator Corp. v. Washington Metropolitan Area Transit*

*Authority*, 16 F.4th 294, 299 (D.C. Cir. 2021) (an appellate decision in which a defect "is neither noted nor discussed * * * does not stand for the proposition that no defect existed"). In any event, the district court's order goes well beyond such *de facto* relief; it puts plaintiffs back in office and orders that they shall continue to serve as *de jure* Members until the conclusion of their terms.

Moreover, in both *Swan* and *Severino*, the Court recognized that even *de facto* relief—an order directing subordinate officials to treat the officer as not having been removed—might not ultimately be available even if the plaintiff were to prevail on the merits. In *Swan*, the Court recognized that the President could "undercut [the] relief" were he "to insist that" his preferred replacement "occupy the position," 100 F.3d at 980-81, and in *Severino*, the Court noted other potential obstacles and relied on the fact that "at the motion to dismiss stage," the plaintiff needed only to "plausibly allege that relief could be afforded," 71 F.4th at 1043.

**B.** Even where a plaintiff has prevailed on the merits, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *accord Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*, 64

31

F.4th 1354, 1361 (D.C. Cir. 2023) (applying *eBay*). Thus, even if the Court concludes that plaintiff should prevail on the merits, it should reverse the grant of a permanent injunction because the court abused its discretion in granting equitable relief to reinstate plaintiff. This Court has made clear that when granting a permanent injunction, the district court must consider "the balance of hardships between the plaintiff and defendant" and whether "the public interest would not be disserved by a permanent injunction." *Zukerman*, 64 F.4th at 1364 (quoting *eBay*, 547 U.S. at 391). The public interest and balance of equities factors merge where, as here, the government is the defendant. JA67 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The equitable factors likewise decisively favor the government. In *Wilcox*, 145 S. Ct. at 1415, the Supreme Court stayed district court orders reinstating principal executive officers and premised that stay on its observation that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." That equitable calculus is identical here. Order at 1 (D.C. Cir. Aug. 21, 2025)

As a result of the district court's order, two principal officers whom the President removed will continue to exercise executive power over the President's objection. It is accordingly unsurprising that the Supreme Court has emphasized that the equities decisively favor the government while staying orders that reinstate principal officers. That reasoning "informs how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

Conversely, forgoing reinstatement would not harm plaintiffs. Although removal deprives them of employment and salary, the traditional remedy for such claims has been an award of backpay, not reinstatement. Backpay would not enable plaintiffs to perform the duties of their former offices, but those duties are vested in the office, and plaintiffs have no personal right to exercise the powers of an office after having been removed. The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting), *judgment vacated sub nom. Burke v. Barnes*, 479 U.S. 361 (1987). Executive power belongs to the President, not plaintiffs.

33

Finally, if the government prevails after all review, any actions taken by the NCUA with plaintiffs as reinstated Board Members will be called into question, upsetting expectations and risking placing regulated parties in a whipsaw. *See Collins*, 594 U.S. at 259-60 (explaining that plaintiffs contesting agency action based on unconstitutional removal restrictions could potentially show "compensable harm" where "the President had attempted to remove [an agency head] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"). The potential for the NCUA in the future to reconsider those prior actions may interfere with its ability to timely process other pending matters. Plaintiff's claimed equities cannot outweigh the grave and unprecedented harm this injunction causes to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. MCARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
*/s/ Laura E. Myron*
LAURA E. MYRON
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

SEPTEMBER 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 7,198 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Laura E. Myron*
Laura E. Myron